# HENRY P. SJOBECK v. HUGH E. LEACH AND ANOTHER, COPARTNERS AS LEACH & SWORE.[1]

December 11, 1942.

No. 33,224.

*Leach & Swore, pro se.*
*Leonard Eriksson* and *Owen V. Thompson,* for respondent.

[1]Reported in 6 N. W. (2d) 819.

STREISSGUTH, JUSTICE.

Plaintiff sued defendants, copartners in the practice of law, for their alleged negligence in failing to procure his discharge in bankruptcy. He recovered a verdict of $992.32, representing the principal amount of a default judgment recovered against him by a creditor upon a claim which had been filed in the bankruptcy proceeding and which would have been released by his discharge in bankruptcy. The jury denied recovery upon a second cause of action for expenses incurred in the defense of an action upon the claim.

In 1935 plaintiff bought a retail clothing business in Parkers Prairie on credit for $2,000, the purchase money notes being executed by him and his father, Henry H. Sjobeck. A few months later he married, and his wife lent him an additional $420 for business purposes. Within a year both mercantile and marital ventures failed. In April 1936 plaintiff sold his business for $1,000, but before the sale was fully consummated his wife brought suit for divorce and alimony and served upon him a court order restraining the sale. The proceeds of the sale were thereupon deposited in a bank to abide the outcome of the divorce action and of negotiations for a composition agreement between plaintiff's creditors, who at that time comprised (1) his father, with a claim of $2,523.16; (2) Johnson & Company, a jobber, with a claim of $487.49; and (3) his wife, with a claim of $420 plus her claim for alimony.

At this juncture plaintiff and his father retained the defendants as attorneys. The parties disagree as to the extent of the retainer, but we must here accept the plaintiff's version that defendants were retained for the triple purpose of protecting the claim of plaintiff's father, procuring an adjustment of his wife's claims, and "to take him [plaintiff] through bankruptcy."

Negotiations for an amicable settlement of the multiple disputes having failed, defendants on May 15, 1936, prepared for plaintiff a voluntary petition in bankruptcy, with complete schedules, and

also had plaintiff sign in blank a printed petition for his discharge in bankruptcy. The then bankruptcy law required that the petition for discharge be filed not less than one month after the adjudication in bankruptcy and within twelve months thereafter, except where the time be extended not to exceed an additional six months for cause. Bankruptcy Act, § 14a, as amended by act of May 27, 1926, 44 St. 663, c. 406, § 6 (11 USCA, c. 3, § 32a).

Plaintiff's petition for adjudication in bankruptcy was filed with the referee in bankruptcy on June 3, 1936, but his petition for discharge remained in the attorneys' file in its original blank form and was never used. Plaintiff testified that defendant Swore "said he would file it [petition for discharge] when it was time to file it and when we had had the hearings of the bankruptcy." Mr. Swore's explanation is that the primary purpose of his preparing the petition in bankruptcy was to procure a pro rata distribution of the proceeds of the sale among all creditors, including plaintiff's father, and when this was accomplished, the filing of the discharge petition was to be considered.

Swore also claimed that because of plaintiff's admissions upon his first examination in bankruptcy that he had made a materially false financial statement to procure credit from Marks Manufacturing Company, a firm whose claim had been paid prior to bankruptcy, he, Swore, was of the opinion that no discharge in bankruptcy could be obtained. He so advised plaintiff by letter on June 30, 1936, and specifically asked plaintiff to "let us know what your wishes are." Swore also wrote the father on the same date, stating: "My opinion is that as a result of his [plaintiff's] testimony, he will probably not be entitled to a discharge."

In reply to a later letter to him, plaintiff late in July 1936 wrote defendants:

"* * * Mr. Swore you go down and see my father and talk it over with him and whatever you and my father can decide is O. K. with me and after you have talked to him drop me a line

please. * * * Mr. Swore *all I ask is do your best as to your way of helping my father especially.*" (Italics supplied.)

From about September 1 to December 24, plaintiff was confined in jail for contempt in not paying alimony. During that period he engaged other attorneys to represent him in the divorce proceedings.

On February 3, 1937, the referee in bankruptcy allowed the father's claim in full. Defendants immediately thereafter filed their claim for services rendered the bankrupt, crediting against the same the amount paid them at the time of the filing of the petition. This claim, under the law, could not include services in connection with the bankrupt's petition for discharge. Gilbert's Collier, Bankruptcy (4 ed.) § 1230. Other claims for expenses of administration were also allowed and paid and the balance then distributed pro rata among plaintiff's creditors, including his father. The principal purpose of instituting the bankruptcy proceedings having been to procure a pro rata distribution of the bankrupt's assets among his creditors, including his father, and such result being forecast when the father's claim was allowed on February 3, 1937, no further attention was given to the filing of the discharge petition, either by the bankrupt or by his several attorneys, notwithstanding the year for filing the petition expired on June 5, 1937.

In 1940 plaintiff's father died, leaving an estate in which plaintiff was entitled to share. Upon learning of the father's death, Johnson & Company, one of plaintiff's original creditors, brought suit against plaintiff on the unpaid balance of its claim and the unpaid balance of the claim of plaintiff's former wife, which had been assigned to it. It was then discovered by plaintiff that no discharge in bankruptcy had been petitioned for or granted. The interest of plaintiff in his father's estate was thereupon hastily transferred to his brothers and sisters, also heirs of the estate, though this would not have been necessary, because the heirs would have had the right of offset of the unpaid balance of the father's

claim against the interest which plaintiff was entitled to as an heir. In re Estate of Lindmeyer, 182 Minn. 607, 235 N. W. 377. Johnson & Company were thereby effectively stymied and prevented from collecting their claim by attachment or garnishment out of the father's estate.

Plaintiff, not having been granted a discharge in bankruptcy, had no defense to the claim sued upon. Accordingly, upon advice of his present attorneys, he permitted the claims to be reduced to judgment by default. Immediately upon entry of the default judgment, he commenced the present action against his former attorneys to recover the amount of the judgment, including in the suit a second cause of action for expenses incurred in defending the Johnson suit. The jury returned a verdict for plaintiff for $992.32, the principal amount of the Johnson judgment, without interest. Nothing was allowed him on his second cause of action for attorneys' fees and expenses.

At the trial below plaintiff relied (1) upon his asserted instructions to defendants at the time of their original retainer that they "take him [plaintiff] through bankruptcy," and (2) upon the inability of defendant Swore to account for the failure to file the discharge petition when, after a lapse of five years and in 1941, he was first asked to explain such failure. Defendants urged (1) that they purposely and in good faith refrained from filing the discharge petition because of their conviction that it would be futile; (2) that the matter of filing the discharge petition was left to their discretion by plaintiff's letter above referred to and that they were thereby released from his previous instructions, if any, to file the discharge petition; and (3) that the purpose of the bankruptcy was fully realized when the referee allowed the claim of bankrupt's father.

An attorney may, under some circumstances, be under a positive duty to carry out specific instructions of his client except as to details. 7 C. J. S., Attorney and Client, p. 985, § 148. But such instructions may thereafter be withdrawn and the ultimate deci-

sion left to the judgment of the attorney. Plaintiff's own letter of July 1936, from which we have quoted, conclusively establishes such to be the case here. Any specific instructions to file a petition for discharge in bankruptcy originally given by plaintiff having by this letter been withdrawn, liability of the defendant attorneys can only depend upon whether they acted in good faith and with reasonable care and did what they honestly supposed, and were justified in supposing, to be to the best interest of their client. Mere error of judgment on the attorney's part does not create liability. 7 C. J. S., Attorney and Client, p. 978, § 140.

"An attorney is * * * bound to exercise * * * only a reasonable degree of care and skill, having reference to the character of the business he undertakes to do. He is not answerable for every error or mistake, and will be protected as long as he acts honestly and in good faith to the best of his skill and knowledge, or with at least reasonable skill and learning and an ordinary degree of attention or care." 5 Am. Jur., Attorneys at Law, p. 334, § 125.

In view of plaintiff's letter, the question of defendants' liability resolved itself into a question of whether they acted in good faith in omitting to file the petition for plaintiff's discharge in bankruptcy because, in their opinion, the discharge was unnecessary and because the probability of obtaining it over objection of creditors was doubtful. Plaintiff by his letter relieved defendants of any positive duty to file the discharge petition, and defendants were clearly authorized to withhold the filing thereof if they, in good faith, considered such filing either unnecessary or futile, and this without creating any liability to plaintiff for neglect.

That defendants were well justified in doubting the futility of a petition for discharge appears from the testimony of plaintiff upon his first meeting of creditors before the referee in bankruptcy. Upon that examination he shamelessly admitted that in a written statement given on April 6, 1935, to the Marks Manufacturing Company for the purpose of procuring credit he materially falsified both his assets and his liabilities. He admitted

that the statement was given to obtain credit and that he obtained credit on the strength thereof.

Under § 14b of the bankruptcy act as it stood in 1935 (11 USCA, c. 3, § 32b), one of the grounds of objection to a discharge of the bankrupt was that he had "obtained money or property on credit * * * by making or publishing * * * a materially false statement in writing respecting his financial condition." The right to oppose a discharge on that ground was not limited to the creditor defrauded but could be urged by any creditor of the bankrupt. In re Feinberg (D. C.) 287 F. 254; In re Harr (D. C.) 143 F. 421; In re Kretz (D. C.) 212 F. 784; In re Guilbert (D. C.) 154 F. 676; In re Levey (D. C.) 133 F. 572. And this though the claim of the defrauded creditor was paid in full prior to bankruptcy. In re Harr, *supra*.

The giving of this false financial statement was the subject of considerable correspondence between attorneys for plaintiff's creditors (not including Marks Manufacturing Company) and the defendants, who then represented plaintiff. Defendants forwarded copies of this correspondence to plaintiff, and in a letter to plaintiff dated June 30, 1936, Mr. Swore definitely advised plaintiff: "So far as your bankruptcy proceedings are concerned, it is my opinion that on account of your testimony, you will probably be denied a discharge." The record, in our opinion, conclusively establishes the good faith of the attorneys and is wholly devoid of any testimony which would justify a jury in finding that defendants were negligent or violated their professional duty to plaintiff.

We have not overlooked the circumstance so strongly relied upon by plaintiff that in 1941, more than four years after the bankruptcy proceedings had been closed, when defendant Swore was first confronted with the charge that he had omitted to file the petition in bankruptcy, he examined his file, found the blank discharge petitions, and "admitted he was surprised to find them there." The testimony of plaintiff's present counsel, Mr. Thomp-

son, makes it clear that Mr. Swore had no independent recollection of the matter without referring to his file. On cross-examination by Mr. Swore, Mr. Thompson testified:

"Q. I told you I couldn't remember anything about it, it was five years ago and I couldn't remember anything about it without checking into it carefully?"

"A. That's right,—or words to that effect."

Upon examining the file, however, the entire history of the matter came back to Mr. Swore's mind; and, with the aid of the correspondence in the file, he was able to explain in full detail the history of the blank discharge petition and give the reason why it was not filed. Mr. Swore's explanation stood uncontradicted and unimpeached. His good faith and honest judgment in not filing the petition being conclusively established, a verdict against defendants in any amount was unjustified.

The order below is reversed with directions to enter judgment in favor of defendants.

PETERSON, JUSTICE (concurring specially).

I concur only in the result.

Where an attorney is under specific instructions, he is under a positive duty to carry them out or withdraw from the employment. Where such instructions are given before the employment is undertaken, he should be required to elect either to bind himself to perform the instructions according to their terms or to decline the employment altogether. In no event should an attorney be permitted to undertake the performance of specific duties and then exercise a judgment as to whether or not he will perform.

Here there is no occasion to hold or to intimate that an attorney may in his judgment decline to carry out specific instructions of the client. On the contrary, the letter in question not only revoked any prior instructions, but specifically vested the defendants as plaintiff's attorneys with discretion as to what action should be taken. They exercised that discretion correctly as a matter of law by deciding against taking any proceedings to ob-

tain a discharge in bankruptcy. The utter futility of attempting to obtain a discharge under the circumstances was apparent to them. They were in duty bound both as members of the bar and as the attorneys for plaintiff to refrain from asserting baseless claims and instituting futile proceedings. Consequently, under the circumstances, defendants were not liable for negligence as a matter of law.

MR. JUSTICE PIRSIG took no part in the consideration or decision of this case.