247 Minn. 50 (1956)
75 N.W. (2d) 906
IN RE TRUST CREATED UNDER WILL OF DAVID FREEMAN.
LEONARD FREEMAN
v.
MARIAN WINKELMAN AND OTHERS.
MARIAN WINKELMAN
v.
ABNER FREEMAN AND OTHERS.
ABNER FREEMAN
v.
MARIAN WINKELMAN AND OTHERS.
Nos. 36,660, 36,661, 36,662.
Supreme Court of Minnesota.
March 29, 1956.
*51 Van Valkenburg, Blaisdell & Moss, for Abner Freeman.
Leonard, Street & Deinard and Melvin H. Siegel, for Marian Winkelman.
Levitt & Rogers, for Leonard Freeman.
KNUTSON, JUSTICE.
By his last will and testament, David Freeman established a trust for the benefit of his three children, Abner, Leonard, and Marian. The will appointed the two sons, Abner and Leonard, and First National Bank and Trust Company of Minneapolis as cotrustees and directed the trustees to employ the two sons as agents for the management of the real estate, which consisted mostly of business *52 rental property in the city of Minneapolis. The will then contained the following clause:
"* * * I give to my son, Abner Freeman, while he is serving as Co-Trustee hereunder, and to my Corporate Trustee the power to make other arrangements for the employment of Agents from time to time. During the time my sons perform satisfactory service as such Agents, they shall be paid reasonable compensation which, I suggest, be on the approximate basis that each of them was paid at the time of my decease if so employed at that time, except as it may seem fair and just to make changes in such compensation."
Pursuant to a petition of all three children and the corporate trustee, the District Court of Hennepin County provided by order dated August 15, 1946:
"It is ordered that the trustees be, and they hereby are, authorized to employ Abner Freeman as manager of the real property and other assets of the trust estate for a period of one (1) year from date hereof, at a salary of Four Hundred and no/100 Dollars ($400.00) per month, with privilege to said Abner Freeman to employ a secretary or stenographer at a reasonable and usual salary."
On November 5, 1947, again on a petition of all interested parties, the court made an order reading substantially the same, employing Abner as managing agent from July 1, 1947, through June 30, 1948, at a salary of $500 per month. As far as appears from the record, that order has been continued since that time.
The gross income from the trust property amounted roughly to $100,000 per year. Abner, as managing agent, received certain discounts on purchases of coal and rebates on insurance, which were credited to the trust prior to 1951. About that time he sought an expense account, but this was denied him by Leonard and the bank. He thereupon informed them that he would retain these discounts and rebates to reimburse himself for money spent for the benefit of the trust, which he did. Dissension arose between Leonard and Abner.
*53 On June 11, 1953, the bank filed its petition for allowance of several annual accounts and asked to be discharged as trustee. Leonard refused to sign the account for the year ending July 10, 1952. He and Marian filed objections to the allowance of this account and also petitioned the court for an order removing Abner as trustee and managing agent, alleging numerous acts of misconduct and mismanagement of the trust property. The charges can be summarized as follows: That Abner's salary as managing agent was excessive; that the expense of a secretary for him was unnecessary and not a proper charge against the trust; that he had received and had failed to account for certain discounts and rebates; that he had received and had failed to account for secret profits and discounts in reference to trust business; that he had used the office furnished by the trust primarily for his own personal affairs; that he had demanded illegal rebates; and that he had failed to manage the property of the trust in a proper manner in that he had (a) failed to rent the property; (b) antagonized tenants; (c) exacted unreasonable and arbitrary terms from tenants; (d) given unlawful gratuities and inducements to public officials and others; (e) leased trust property to undesirable and financially irresponsible persons; (f) failed to make necessary repairs; and (g) involved the trust in an excessive amount of litigation. The final charge was that the conduct of Abner had created such dissension as to impair the proper administration of the trust.
The case came on for hearing before the Honorable Frank E. Reed, who found against the objectors on every charge except one. With respect to the charge that Abner had received and had retained discounts and rebates, the court found:
"That during said period of time said Abner Freeman, as Managing Agent, with the knowledge of, but without the consent of the First National Bank of Minneapolis, Leonard Freeman and Marian Winkelman, received, accepted and retained certain sums of money as refunds, commissions or rebates upon fuel bills and insurance premiums paid by him in connection with the management and operation of the properties of said Trust Estate; * * *.

* * * * *
*54 "That the retention by said Abner Freeman of said refunds, commissions and rebates was not concealed by said Managing Agent but was done openly, without misrepresentation or deceit, and for the avowed purpose of thereby offsetting said business promotional expenses for which an expense account was refused.
"That business promotional expenditures are a necessary and proper expense of operation of said Trust Estate.
"That the retention by said Managing Agent of said refunds, commissions and rebates was unauthorized; but that such retention was not accomplished with dishonest intent; involved no deceit, concealment or moral turpitude; represents only an error of judgment remediable by a restoration of the moneys withheld; and does not constitute misconduct of sufficient import to justify or require the dismissal or disqualification of said Abner Freeman as Trustee or Managing Agent."
The court then found that it was for the best interests of the trust that Abner be retained as trustee and managing agent. It accepted the resignation of the bank and appointed one Irving H. Robitshek as its successor trustee. In order to alleviate the dissension which existed between Abner and Leonard and the possible harm which might result to the trust from such dissension, the court instructed the trustees, among other things, as follows:
"That in case of dispute or inability of the Co-Trustees to agree upon the policies to be pursued, including specifically but not by way of limitation, the policies in respect to rents, tenancies, repairs, improvements, litigation, operating expenses and expense accounts, the decision of said Irving H. Robitshek shall control and shall be binding upon the other Co-Trustees, except that no personal liability or responsibility shall result to any Co-Trustee in respect to any matter to which he shall not have consented expressly or by acquiescence."
Abner was ordered to pay over to the trustees all rebates or commissions he had collected, and the trustees were instructed to grant a reasonable expense account to him as managing agent.
*55 The court thereupon retained jurisdiction of the matter until the final account of the bank could be settled and for the purpose of determining at a later date what allowances should be made for attorneys' fees and expenses in the litigation. The bank in no way is involved in this appeal. No appeal has been taken from Judge Reed's order.
Judge Reed retired before the matter was finally disposed of, and the matter then came on for hearing before the Honorable Theodore B. Knudson for a determination of attorneys' fees and expenses to be allowed to the contesting parties. The attorneys for Abner submitted a claim for $6,000 attorneys' fees and $319.95 expenses. The attorney for Leonard submitted a claim for attorney's fees amounting to $3,300 and expenses, and the attorneys for Marian claimed attorneys' fees amounting to $4,825. The court found that half of the services rendered by Abner's attorneys was chargeable to work done for him in his capacity as managing agent, which services were not chargeable to the trust. It allowed them attorneys' fees in the sum of $3,000 and expenses in the sum claimed. With respect to services rendered for Leonard and Marian, the court found:
"That the services, expenses and disbursements rendered and expended by * * * attorney for Leonard Freeman in presenting said Petition for Abner Freeman's removal as Trustee were unnecessary and of inconsequential benefit to the above Trust Estate; that the services accomplished something of benefit in objecting to said accounts and certain of his practices as Managing Agent * * * that they were of the reasonable value of $1,500.00 to the Trust."
A similar finding was made with respect to the services rendered by attorneys for Marian, and the same amount was allowed to them.
Abner appealed generally from the order and particularly from that part in which a part of the fees claimed by his attorneys is held to be chargeable to services rendered for him in his capacity as managing agent. He also appeals from that part of the order allowing fees to attorneys for Leonard and Marian. Leonard and Marian appeal separately only from that part of the order allowing Abner's attorneys' fees. The appeals have been consolidated here. In view *56 of the fact that all parties appear both as respondent and appellant, we refer to them by their given names in order to avoid confusion.

LEONARD'S AND MARIAN'S APPEALS
The appeals of Leonard and Marian raise only one question, namely, whether Abner is entitled to any attorneys' fees at all.
1. There is little dispute in the applicable law. A trustee is entitled to reasonable attorneys' fees, to be paid out of the trust estate, incurred in good faith in defending his administration of the trust.[1]
2. Where a trustee has acted in bad faith or has been guilty of fraud or inexcusable neglect that has caused loss to the estate he may be denied attorneys' fees.[2]
3. While the evidence here shows that the court did find against Abner on a comparatively small item consisting of rebates and commissions retained by him, the court found in favor of Abner on the numerous charges made against him. The one finding against him is in his capacity as managing agent. The court found nothing against him in his capacity as trustee. The court also found that Abner kept these rebates and commissions with full knowledge of the others and without any intention to defraud or deceive them. The court further found that it was a mistake of judgment on his part to do so. While it was improper for Abner either to receive or to retain the commissions on insurance, there is no evidence of bad faith in his doing so, and the trust had accepted these commissions up to the year involved. The court expressly so found. Were that the only charge made against him, it hardly would have been likely that any litigation would have been necessary. A simple instruction from the court would have been sufficient. On the record before us, we think that there is no merit to the contentions of Leonard and *57 Marian that Abner is not entitled to any fees. The order of the court on these appeals is affirmed.

ABNER'S APPEAL
The appeal of Abner presents two questions, namely: (1) Was the court justified in dividing his attorneys' fees  half for services rendered for him in his capacity as trustee, which was chargeable against the trust, and the other half in his capacity as managing agent, which was not chargeable to the trust? (2) Could the court on this record allow fees to the attorneys for Leonard and Marian?
4. The rule with respect to the rights of a beneficiary to recover attorneys' fees and expenses in such litigation is quite exhaustively covered in In re Living Trust Created by Atwood, 227 Minn. 495, 35 N.W. (2d) 736, 9 A.L.R. (2d) 1126. As there stated, attorneys' fees and expenses incurred in good faith in litigation brought and prosecuted for the benefit of the estate may be allowed by the court. Not so if the issues are immaterial or trifling or if the party bringing the proceeding unnecessarily creates expense for the estate.
Here the court found that the objections against Abner as trustee were unnecessary and of inconsequential benefit to the estate. Apparently no fees were allowed for such services. The court further found that the services accomplished something of benefit in bringing about the discontinuance of certain objectionable practices of the managing agent. It is also clear that the dissension which had existed between Abner and Leonard and which led to the resignation of the bank as cotrustee, if continued, would be a detriment to the estate. This dissension was brought to the attention of the court by the petition of the objectors for Abner's removal as trustee and as managing agent. More particularly, this objection probably related to his duties as managing agent. By procuring instructions from the court placing Irving H. Robitshek in a position of control, it is likely that this dissension will be eliminated, or at least it will not be permitted to harm the estate. To that extent the services have been of some value. The court may have been liberal in the amount of the allowance, but we do not think that the allowance is so liberal as to constitute a clear abuse of discretion. We hold *58 that the fees allowed the attorneys for Marian and Leonard should be affirmed.
5. The more difficult question, and that most seriously urged by Abner, is whether the services of Abner's attorneys could be divided so as to charge half the fees to him as trustee and half as managing agent. There can be little doubt that he was acting in a dual capacity. Many, if not most, of the serious charges were leveled at him in his capacity as managing agent. In fact, the only charge established against him was in that capacity. While it is difficult to visualize this proceeding as being partly against him in one capacity and partly in another, it is apparent that, had he not been managing agent, many of the charges could not have been made against him at all and much of the litigation probably would have been unnecessary. He had a personal interest, quite apart from his interest as cotrustee, in defending against these charges. He was paid a salary of $6,000 per year as managing agent. It was of interest to him to retain that employment. Had the two positions been held by separate individuals and had the charges with which we are here concerned been brought against each, it seems obvious that both, if they wished to retain their respective positions, would have had to defend themselves.
In fixing attorneys' fees to be allowed against a trust in cases of this kind, much must be left to the sound discretion of the trial judge. No hard-and-fast rule can be formulated which will permit the fixing of such fees by any mathematical formula. Where, as here, all parties prevail in part and are unsuccessful in part, the court must have some latitude in determining what shall be allowed. Even if it be conceded that Abner appeared before the court only in his capacity as trustee, it would follow that some of his practices were open to question. Upon such finding, the court could deny him part of his fees and allow him something where, as here, the court found that such practices were due to a mistake in judgment, not to any fraud, deceit, or bad faith. We think, however, that the court's finding that he appeared in his dual capacity is the better *59 reasoning. As such, the court could find that part of his attorneys' services is properly chargeable to him in each capacity.[3]
We think that the allowances made in all cases were within the reasonable discretion of the trial court, and the order as appealed is affirmed as to all appeals.
The briefs in this case to submit the issues involved are so unnecessarily long that no costs are allowed to any party.
Affirmed.
NOTES
[1] Andrist v. First Trust Co. 194 Minn. 209, 260 N.W. 229; In re Trust of Butler, 203 Minn. 555, 282 N.W. 462, 124 A.L.R. 1178; Annotations, 101 A.L.R. 806 and 9 A.L.R. (2d) 1132.
[2] In re Trusteeships Under Will of Drake, 195 Minn. 464, 263 N.W. 439, 101 A.L.R. 801.
[3] In re Delamater's Estate, 54 N.Y.S. (2d) 185; Matter of Harris, 277 App. Div. 1030, 100 N.Y.S. (2d) 784 (for facts in this case, see 52 N.Y.S. [2d] 195); Matter of Hildreth, 274 App. Div. 611, 85 N.Y.S. (2d) 829.