**In the Matter of the TRUSTEESHIP OF the Trust Created under the Last Will and Testament and Codicil thereto of James T. WILLIAMS, Deceased.**

Nos. C5–98–1471, C5–98–1504.

Court of Appeals of Minnesota.

April 27, 1999.

Alan I. Silver, Richard A. Wilhoit, Norman M. Abramson, Doherty, Rumble & Butler, P.A., Minneapolis, MN (for Robert H. Williams and Robert K. Williams, appellants in C5–98–1471 and respondents in C5–98–1504)

Bonnie M. Fleming, John F. Beukema, Brendan W. Randall, Eunice P. de Carvalho, Faegre & Benson L.L.P., Minneapolis, MN

(for Norwest Bank Minnesota, respondent in C5–98–1471 and appellant in C5–98–1504)

Eric J. Magnuson, Richard J. Nygaard, Larry R. Henneman, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN (for Margaret W. Linstroth, respondent in C5–98–1471 and C5–98–1504)

Considered and decided by TOUSSAINT, Chief Judge, LANSING, Judge, and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

In this consolidated appeal, appellants Robert H. Williams and Robert K. Williams challenge the dismissal of their surcharge action against respondent-trustee Norwest Bank Minnesota, National Association (Norwest), contending the district court erred in concluding that (1) a corporate trustee may rely upon an exculpatory clause in a trust instrument; and (2) the language of the particular exculpatory clause at issue here protects Norwest. Norwest also appeals,[1] contending the district court abused its discretion by denying payment of attorney fees from the corpus of the trust and erred in releasing Norwest's co-trustees, Robert H. Williams and Margaret Linstroth, from liability. We affirm in part, reverse in part, and remand.

## FACTS

In his last will and testament, dated August 22, 1949, and codicil thereto, dated August 29, 1950, James T. Williams created a trust. The original corporate trustee was Northwestern National Bank of Minneapolis. Northwestern changed its name, first to Norwest Bank Minneapolis, National Association, and then to Norwest Bank Minnesota, National Association. From 1979 until 1997, the trustees were appellant Robert H. Williams, Margaret Linstroth, and respondent Norwest.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Norwest is appellant in one of the consolidated cases and respondent in the other.

Under Minn.Stat. § 501B.23 (1998), the Williams trust is subject to the continuing supervision of the district court. The trustees' accounts of the trusteeship from the trust's inception through December 31, 1989 have been filed with the district court and were duly settled and allowed by prior orders of the court.

James T. Williams, the trust's creator, was the founder of the Creamette Company, and Creamette stock originally accounted for 98% of the trust's value. In 1979, Creamette was acquired by Borden, Inc. As part of the Borden acquisition, the trust's Creamette stock was exchanged for Borden common stock. As of January 1, 1980, nearly 100% of the total market value of the trust was in Borden stock. The trust owned 630,948 shares of Borden stock at that time.

Beginning in 1980, the trustees began selling shares of Borden stock because of a perceived need to diversify trust assets. As of December 31, 1989, the last date through which trusteeship accounts have been settled and allowed by the district court, the trust owned 600,000 shares of Borden common stock at a value of $36.375 per share, and that stock accounted for 39.3% of the total market value of the trust.

From 1990 through 1994, the trustees generally voted to defer further divestment of Borden stock. The Williams trust's board of trustees makes decisions by majority vote, so although Robert Williams moved to sell Borden stock, Norwest and Linstroth were able to defeat the motions. Norwest and Linstroth apparently felt that it would be prudent to hold Borden stock until the price of the stock rose in value. Borden stock ultimately lost value. The trustees disposed of most of the trust's Borden stock by exchanging it for RJR Nabisco stock. For purposes of this stock exchange, Borden common stock was valued at $14.25 per share. Because Borden stock was previously valued at $36.375 per share, this exchange represented a significant loss in the value of the trust.

By petition dated June 6, 1996, trustees Linstroth and Norwest sought approval of the trustees' annual accounts for the trusteeship from 1990 to 1995. Appellant Robert H. Williams filed objections to the petition, claiming that Norwest, as corporate trustee, was responsible for the trust's loss in value from 1990 to 1995 and should be surcharged for the trust's losses.

Norwest eventually asserted that article VIII, section 12 of the trust instrument protects it from liability. That clause states:

No Trustee shall be liable for the default or doing of any other Trustee, whether the act be one of misfeasance or nonfeasance, nor shall he be held liable for any loss by reason of any mistake or errors of judgment made by him in good faith in the execution of the trust.

The district court dismissed the action against Norwest on the basis of this clause because the court found that Norwest did not act with malfeasance and therefore was not liable.

## ISSUES

I. May Norwest, as corporate trustee, use the exculpatory clause in the trust instrument as a shield to liability for breach of trust without violating public policy?

II. Does the exculpatory clause at issue shield Norwest from liability?

III. Did the district court abuse its discretion in refusing to award attorney fees from the corpus of the trust?

IV. Did the district court err by ruling that Linstroth and Williams would be released from liability for their administration of the trust?

## ANALYSIS

### I. Public policy

Where the critical evidence in interpreting a trust instrument is documentary, this court engages in de novo review. *In Re Trust of Ward*, 360 N.W.2d 650, 652 (Minn. App.1985), *review denied* (Minn. March 29, 1985). Here, the exculpatory clause in question is part of the trust instrument, and thus our review of the meaning and significance of that clause is de novo.

Appellant contends that allowing corporate trustees to use exculpatory clauses as a shield to liability for breach of trust vio-

lates public policy. We disagree. In *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920 (Minn.1982), and *Walton v. Fujita Tourist Enterprises Co.*, 380 N.W.2d 198 (Minn.App. 1986), *review denied* (Minn. March 21, 1986), Minnesota courts examined exculpatory clauses generally and held that such clauses are valid so long as two conditions are met. Before enforcing an exculpatory clause, Minnesota courts look to see

> (1) whether there was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision) *and* (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service).

*Schlobohm*, 326 N.W.2d at 923 (citations omitted).

■ Here, there is no evidence suggesting either that there was a disparity of bargaining power between Norwest and the trust's creator, James T. Williams, or that Norwest somehow compelled Williams to add the exculpatory clause. Moreover, numerous organizations are able to act as corporate trustees, and this particular trust was designed to benefit only private individuals. Thus, service as a corporate trustee for the Williams trust does not appear to be the type of public or essential service discussed in *Schlobohm*. We conclude that Norwest may raise the exculpatory clause in this case without violating Minnesota's public policy.

## II. Application of the exculpatory clause to Norwest

### A. The first portion of the clause

■ In administering a trust, the court's role is limited to fulfilling the donor's intent, and that intent is "to be gathered from the whole instrument and all reasonable inferences that may be drawn from it." *Ward*, 360 N.W.2d at 652. Generally, exculpatory clauses are not favored by the law and are strictly construed against the benefited party. *Schlobohm*, 326 N.W.2d at 923. If an exculpatory clause is either ambiguous in scope or attempts to release the benefited

party from liability for intentional, willful, or wanton acts, the clause will not be enforced. *Id.*

■ Here, the district court found that under the Williams trust instrument, "trustees cannot be held liable for any act of misfeasance or nonfeasance but only for acts of malfeasance." However, the "misfeasance or nonfeasance" portion of the clause states that "[n]o trustee shall be liable for the default or doing of any other trustee," thereby preventing a trustee from incurring liability only for the acts of other trustees. The clause does not protect a trustee from his or her own act of misfeasance or nonfeasance; the clause only relieves a trustee of liability for his or her own acts when loss is suffered "by reason of any mistake or error of judgment made by [the trustee] in good faith in the execution of his trust." Thus, while there may be situations in which the exculpatory clause will eliminate a trustee's liability, the "misfeasance or nonfeasance" portion of the clause does not define those situations.

### B. The second portion of the clause

Norwest contends that even if the district court incorrectly interpreted the clause, that portion relieving a trustee of liability for mistakes or errors of judgment made in good faith applies to Norwest's benefit. *See Myers v. Price*, 463 N.W.2d 773, 775 (Minn. App.1990) (appellate court will affirm the judgment if it can be sustained on any grounds), *review denied* (Minn. Feb. 4, 1991). Appellant argues that this language cannot aid Norwest because Norwest was negligent in failing to vote to divest the trust of Borden stock, and the language of the exculpatory clause does not exculpate a trustee for negligence.

■ We note initially that courts have long distinguished between negligence-type claims and mistakes or "mere errors of judgment." *See Sjobeck v. Leach*, 213 Minn. 360, 365, 6 N.W.2d 819, 821–22 (1942) ("Mere error of judgment * * * does not create liability."); *In re Will of McCann*, 212 Minn. 233, 238, 240, 3 N.W.2d 226, 229, 230 (1942) (indicating that exculpatory clause stating "my said trustees shall not be liable for any

mistake of judgment" did not protect the trustees from negligence); *Fortune v. First Trust Co.*, 200 Minn. 367, 379, 274 N.W. 524, 530 (1937) ("[T]he distinction between negligence and mere errors of judgment must be borne in mind. 'Trustees acting honestly, with ordinary prudence and within the limits of their trust, are not liable for mere errors of judgment.'") (citation omitted). Moreover, this distinction has existed since before the trust instrument at issue here was created. Thus, we can reasonably assume that the trust creator was aware of these distinctions and could have exculpated a trustee for negligent acts had he wished to do so. Because our task is to find the intent of the trust's creator, and trust instruments are to be strictly construed, we conclude that while the exculpatory clause protects a trustee from liability for "mistakes or errors of judgment," it does not do so for negligent acts.

■ Norwest concedes that it is a professional trustee and has greater skills in the area of trusts than does a person of ordinary prudence. Therefore, Norwest was under a duty to use those skills under Minn.Stat. § 501B.10, subd. 1(a) (1994).[2] Further, failure of a professional to meet a minimum standard of care is not a mere error in judgment. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 116 (Minn.1992).

■ Generally, expert testimony is required to establish the standard of care and breach of that standard, unless the conduct can be evaluated by a jury in the absence of expert testimony. *Id.* A review of the record convinces us that a material fact issue exists as to whether Norwest met the minimum standard of care for a professional trustee. Appellant's expert investment executive concluded in his affidavit that

> [m]y professional experience indicates that even under special circumstances, the Borden holding should have represented no more than 10% of trust assets after a maximum of five years.

Moreover, the district court itself observed that "[appellant] raised substantial and serious questions as to whether Norwest breached its fiduciary obligations." We must remand for trial on the issue of possible negligence of Norwest.

In determining the presence of a material fact issue on negligence, we of necessity reject Norwest's reliance on Minnesota caselaw to support the argument that any error with respect to divesting the trust of Borden stock cannot be labeled negligence. In *In re Will of Comstock*, 219 Minn. 325, 17 N.W.2d 656 (1945) and *Fortune*, 200 Minn. at 367, 274 N.W. at 524, Minnesota courts determined that a trustee's decisions concerning the disposition of trust securities involved only claimed errors of judgment, not negligence. Both *Comstock* and *Fortune*, however, were matters tried on their merits. The negligence issue went to a fact-finder. On appeal, the reviewing court merely concluded that the district court finding of no negligence was not incorrect as a matter of law. *Fortune*, 200 Minn. at 382, 274 N.W. at 531; *Comstock*, 219 Minn. at 333, 17 N.W.2d at 661. In remanding this matter, we are assuring that a decision will be made by the fact-finder after trial on the merits, consistent with the procedures in *Comstock* and *Fortune*.

## III. Attorney fees

■ While remand for trial may obviate the necessity of addressing legal fees, we do so in the interest of fully analyzing issues that may recur. The determination of whether attorney fees will be chargeable to the trust is in the sound discretion of the district court. *In re Trust Created by Boss*, 487 N.W.2d 256, 262 (Minn.App.1992), *review denied* (Minn. Aug. 11, 1992). A trustee is entitled to reasonable attorney fees incurred in good faith in defending its administration of the trust, in defending a proceeding for the benefit of the trust, and in defending a beneficiary's challenge to the trust's administration. *In re Trust Created by Hill*, 499 N.W.2d 475, 494 (Minn.App.1993), *review denied* (Minn. July 15, 1993). However, where a trustee has acted in bad faith or has been

---

**2.** Minn.Stat. § 501B.10 was repealed and replaced by Minn.Stat. § 501B.151 and Minn.Stat. § 501B.152. However, during the 1990 to 1995 time period relevant here, Minn.Stat. § 501B.10 was in full force and effect.

guilty of fraud or inexcusable neglect that has caused loss to the estate, the trustee may be denied attorney fees. *In re Trust of Freeman*, 247 Minn. 50, 56, 75 N.W.2d 906, 910 (1956).

 Norwest argues that the district court erred in denying attorney fees on the basis that "[appellant] raised substantial and serious questions as to whether Norwest breached its fiduciary obligations." We find no merit in Norwest's argument on this issue. Even without a judicial determination of misconduct, Minnesota permits courts to consider the underlying allegations against a trustee when deciding whether to allow the trustee's attorney fees to be paid out of the corpus of the trust. *See Kronzer v. First Nat'l Bank*, 305 Minn. 415, 430, 235 N.W.2d 187, 196 (Minn.1975) (allowing the district court to use the underlying action as a reason to deny attorney fees even where the underlying action was not resolved).

 Norwest also contends the district court abused its discretion by finding that Norwest's litigation strategy was costly to the trust. Norwest admits, however, that it twice pursued writs of prohibition in connection with discovery requests, not in the interests of this particular litigation, but rather, because Norwest was concerned about the implications of these requests for other trusts in which Norwest is a corporate trustee. Moreover, the second writ of prohibition was denied by this court as "unauthorized and improper." Also, Norwest refused to turn over the requested documents in a timely fashion. The district court did not err in citing Norwest's litigation strategy in denying attorney fees.

Nor do we find merit in Norwest's contention that its submission of a comprehensive exhibit list was not wasteful. While litigants should be allowed to argue their cases forcefully, presenting a list of 2,170 exhibits for a five-day trial appears excessive and wasteful, and the district court did not err in citing this as a basis for denying fees.

Next, Norwest claims that it reviewed certain tapes in order to find evidence of tampering, even though the tapes were for the most part transcribed. While Norwest may be correct to point out that such vigorous advocacy is not inherently problematic, the district court properly determined that a trust should not have to pay for such advocacy that was this "zealous."

We agree with Norwest that when the district court requested argument on attorney fees it did not make clear that it would only accept argument on Norwest's attorney fees.[3] Thus, it was not improper of Norwest to have briefed attorney fees issues with respect to appellant Williams's attorney fees. We conclude that to the extent the district court denied reimbursement of attorney fees because of Norwest's allegedly improper attorney fees arguments, the district court abused its discretion.

 Finally, Norwest objects to any reliance by the district court, in denying fees, on Norwest's timing in raising the exculpatory clause as a defense. The exculpatory clause was not raised as a defense by Norwest until a hearing on October 7, 1997 (one week before trial was initially set). Even at this hearing, it was counsel for Linstroth who first raised the issue of the exculpatory clause and its potential application to Norwest. While Norwest may not have been required to raise the exculpatory clause as a defense early in the litigation, considerable litigation may have been avoided had it done so. Raising the exculpatory clause late in the litigation did not benefit the trust. The district court properly relied on this tardiness in denying fees.

## IV. Future liability of Linstroth and Williams

Norwest contends the district court erred by discharging Linstroth and Williams from liability for their administration of the trust. The district court's order concerning the liabilities of Linstroth and Williams appears to be somewhat contradictory. In its order and decree, the court stated:

2. That the contribution claims of Norwest Bank Minnesota, National Association

---

**3.** The district court may have *thought* it requested argument on only a portion of the attorney fees issue, but the record does not reflect the court's thinking.

against Margaret L. Linstroth and Robert H. Williams be and hereby are dismissed without prejudice.

The "dismissed without prejudice" language indicates that Norwest is free to bring its contribution claim again in the future. *See* Black's Law Dictionary 469 (6th ed.1990) (term meaning "dismissal without prejudice to the right of the complainant to sue again on the same cause of action. The effect of the words 'without prejudice' is to prevent the decree of dismissal from operating as a bar to a subsequent suit."). In another portion of the district court's order, however, the court concluded that Linstroth and Williams would be "discharged and released from any and all liability for [their] administration of the trust."

These conclusions appear to produce inconsistent rules of law. By dismissing the contribution claim without prejudice, the court indicated an intention to allow a future claim. However, in stating that Williams and Linstroth were released from liability, the court may have precluded Norwest from effectively seeking contribution against Williams and Linstroth. Because the liability of Williams and Linstroth has not been litigated, we vacate the district court's order to the extent that it releases Williams and Linstroth from liability for a future contribution claim by Norwest.

## DECISION

Norwest may assert the exculpatory clause in the trust instrument as a defense to breach of trust without violating public policy. However, the district court erred in determining that the first portion of the exculpatory clause shields Norwest from liability. Further, the second portion of the clause does not protect Norwest from liability for negligent acts, and there is a fact issue as to whether Norwest was negligent. The district court correctly determined that certain attorney fees were not chargeable to the trust except in the case of attorney fees for argument with respect to Williams' attorney fees. Finally, the district court's order is vacated to the extent it releases Williams and Linstroth from liability for future contribu-

tion claims because these issues have not yet been litigated.

**Affirmed in part, reversed in part, and remanded.**

LANSING, Judge (concurring specially in part and dissenting in part)

I agree that the liability limitation in the trust instrument does not exonerate the professional trustee from legal responsibility for its decisions on diversification, but I would base that holding on different grounds. I do not see the distinction, drawn by the majority, between "negligence" and "mistake or error of judgment." Although some *mere* errors of judgment may not be negligence, I do not read the case law to relegate mistakes and errors in judgment to a category of action not included in the tort of negligence. Such a categorization would afford nonprofessional trustees a very limited protection in standard exculpatory clauses. The effects of the artificial construction are demonstrated in this case by the potential liability of the settlor's son and daughter.

The dispositive issue, as I see it, is whether a professional trustee obtains exoneration from its professional standard of care through a trust provision that exonerates all trustees under a general standard of care. For the following reasons, I think the answer to that question is "no."

### I

Public policy allows parties to a contract to negotiate the inclusion of an exculpatory provision, but exculpatory provisions for professional trustees are not favored. *Dunkley v. Peoples Bank & Trust Co.*, 728 F.Supp. 547, 560 (W.D.Ark.1989); *Dill v. Boston Safe Deposit & Trust Co.*, 343 Mass. 97, 175 N.E.2d 911, 913 (1961) ("Exculpatory provisions, especially as to professional trustees, are not looked upon with special favor by the law."); *see Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982) (exculpatory clauses are "not favored in the law"); *see also Tuttle v. Gilmore*, 36 N.J.Eq. 617 (1883) (holding exculpatory clause not per se against public policy, but noting some support for position "that no effective limitation can * * * be imposed on the liability of a

trustee"). This accords with the higher standard of care professional trustees are held to by law. Minn.Stat. § 501B.151, subd. 2(e) (1998) ("A trustee who has special skills or expertise, or is named trustee in reliance upon the trustee's representation that the trustee has special skills or expertise, has a duty to use those special skills or expertise."). This standard, which is part of the Minnesota Prudent Investor Act, reflects a trend in the law of protecting beneficiaries by regulating professional trustees' conduct. *See* Minn.Stat. § 501B.151; *see also* 1996 Minn. Laws ch. 314, § 9 (Minnesota Prudent Investor Act effective Jan. 1, 1997). Due to the strict construction given exculpatory clauses and the higher standard of care required of professional trustees, the law now requires strong evidence or explicit language that the grantor intended the clause to exculpate a professional trustee.

## II

Under Minnesota law, a trustee has a duty to diversify a trust's assets. Minn.Stat. § 501B.151, subd. 3 (1998). Before it enacted the Prudent Investor Act, Minnesota did not require trustees to diversify a trust's assets. *See* Minn.Stat. § 501B.81, subd. 1 (1998); *In re the Trusts Created by Hormel*, 504 N.W.2d 505, 511–12 (Minn.App.1993), *review denied* (Minn. Oct. 19, 1993). *But see* Restatement (Second) of Trusts § 228 (1959) ("Except as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments, unless under the circumstances it is prudent not to do so."). A trust instrument may empower the trustee to maintain an undiversified trust, but it must do so with explicit language, such as incorporating the language of Minn.Stat. § 501B.81, subd. 1, by "a clear expression in a written instrument of the intention of the grantor." Minn.Stat. § 501B.80 (1998).

## III

The court's ultimate purpose in interpreting a trust is to effectuate the intent of the grantor. *In re Trust of Tufford*, 275 Minn. 66, 71, 145 N.W.2d 59, 64 (1966). In determining the grantor's intent, the trust should be construed as a whole. *In re Trusteeship under Agreement with Mayo*, 259 Minn. 91, 95, 105 N.W.2d 900, 903 (1960) ("One of the court's highest duties is to give effect to the donor's dominant intention as gathered from the instrument as a whole."). Although the trust allowed the trustees to retain the original undiversified investment in Creamette stock, Art. VIII, § 4, the trust does not empower the trustees to hold as an undiversified asset the stock exchanged for the Creamette stock. The trust states: "It is, of course, desirable that any sale of said stock be for cash, if possible, but the Trustees may, in their discretion, accept payment of the purchase price partly in cash and partly in notes or in corporate stock of the purchasing company * * * ." Art. VIII, § 4. It also states:

> To invest and reinvest any and all funds which may become available for investment in, or exchange trust assets for, any securities or properties as would be purchased by diligent and prudent individuals of discretion and intelligence in the management of their own affairs, and they shall not be restricted to investments which are prescribed by statute or other law or general custom or practice for the investment of trust funds. * * * It is my wish and desire that the Trustees in making any and all investments and reinvestments hereunder be conservative and cautious and regard more the character, value, safety and security of the investments than the rate of interest and the amount of income and profits to be derived therefrom.

Art. IX. The preference for cash and desire for conservative, cautious investment suggest a preference for diversified, rather than undiversified, assets. At minimum, these facts create a triable issue on whether Norwest, as the professional trustee, had a duty to vote in favor of diversification of the assets.

## IV

Relying on the preceding principles, I respectfully dissent from the majority's holding on Linstroth's and Williams' potential liability. The exculpatory clause provides: "No Trustee shall be liable for the default or

doing of any other Trustee * * * ." Thus, under the language of the exculpatory clause, even if Norwest is found to have breached a fiduciary duty, neither Linstroth nor Williams could be held liable for Norwest's breach.

No facts suggest a basis on which Williams could be liable for a breach of fiduciary duty for the trust's retention of the Borden stock. Williams consistently attempted to have the trust sell its Borden stock. If the claim of breach is directed to some other fiduciary duty, he would still not be liable in this proceeding because any damages would be distinct from the damages incurred by retaining the Borden stock. *See City of Willmar v. Short–Elliott–Hendrickson, Inc.*, 512 N.W.2d 872, 874 (Minn.1994) ("Common liability exists when both parties are liable to the plaintiff for the same damages, even though their liability may depend on different legal theories.") (citation omitted).

As for Linstroth, the second part of the exculpatory clause exculpates trustees "for any loss by reason of any mistake or errors of judgment made by him in good faith execution of the trust." The settlor's apparent intent in this provision was to exculpate trustees for the exercise of their general fiduciary duty of care. Although the exculpation does not extend to the higher standard of care the professional trustee owes to the trust, that circumstance does not strip Linstroth of protection from liability. The exculpatory clause relieves Linstroth of liability in exercising a general duty of care and prudence in directing the investment of the trust's assets.

Furthermore Norwest, until very recently, asserted Linstroth had fulfilled her fiduciary duties. In its June 4, 1998, petition, Norwest requested the district court discharge Linstroth as a trustee and release her "from any and all liability for her administration of the trust." And in an October 6, 1997, report, Norwest's expert asserted that all the trustees, including Linstroth, acted prudently in fulfilling their fiduciary duties. Neither Norwest nor Williams has asserted that Linstroth's actions to retain Borden stock were negligent or in bad faith. Based on the exculpatory clause and the absence of an allegation that Linstroth in bad faith breached a fiduciary duty, there is no reason to hold Linstroth liable for her actions.

The trust exonerates Linstroth and Williams from liability for Norwest's actions. No petition or claim in the district court alleges that either of them breached a fiduciary duty. Based on the record as a whole, the district court did not err in relieving Williams and Linstroth of their liability to the trust.