ALFRED A. WHIPPLE, administrator, *vs.* ERNEST S. GRANDCHAMP.

Hampden.     September 22, 1927. — October 13, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Chiropractor. Physician and Surgeon. Negligence,* Of chiropractor, Violation of statute. *Evidence,* Competency; X-ray photograph; Opinion: expert. *Proximate Cause. Witness,* Expert.

At the trial of an action of tort for personal injuries, including an injury to or fracture of the second vertebra of the plaintiff, records of a city hospital relating to treatment of the plaintiff after the alleged injury and comprising a diagnosis by a member of the hospital staff in the position of radiologist based upon X-ray photographs taken of the plaintiff's spine by an assistant for the radiologist, and testimony by the assistant who took the photographs, properly were admitted in evidence.

A woman, in her declaration in an action of tort, alleged that "the defendant held himself out as competent to treat and cure her as a physician of the malady from which she was then suffering; that the defendant did undertake to treat and cure her said malady; and . . . treated her in an unskillful, careless and negligent manner." At the trial, it appeared that when the plaintiff consulted the defendant, in 1924, she understood that he was a chiropractor and not "a surgeon or medical

man." The defendant, in answer to an inquiry by the judge, and subject to an exception by him, stated that he was not authorized to practise medicine within this Commonwealth nor registered for that purpose. The defendant also testified that the plaintiff accepted treatment from him subject to certain conditions to which she consented. There was evidence that, due to treatment given to the plaintiff by the defendant and described in the evidence, the plaintiff suffered physical harm. There was a verdict for the plaintiff. *Held,* that

(1) The defendant in his treatment of the ailment of the plaintiff was exercising his calling as a chiropractor in a matter within the field of medicine or surgery and the terms of G. L. c. 112, § 6, and while so acting was not within any one of the exempted schools, classes, persons, or situations enumerated and described in G. L. c. 112, § 7;

(2) Evidence offered by the defendant to prove that "he did possess the learning and skill, and does possess the learning and skill, possessed and exercised by chiropractors praticising in this and similar communities," properly was excluded;

(3) The unlawful acts of the defendant did not become lawful as between the plaintiff and himself by reason of her assent to the exercise of such acts in her behalf, nor by reason of the alleged fact that a school of medicine justified them by its rules and principles of practice;

(4) G. L. c. 112, § 6; St. 1927, c. 137, must be construed as intended to afford relief by way of damages to all persons suffering harm where the violation of the statute is the proximate cause of their injuries;

(5) A finding was warranted that the acts of the defendant in violation of the statute were a proximate cause of the harm which the plaintiff sustained in consequence of the defendant's practice upon her of the methods of the chiropractic school of medicine or system of practice.

Knowledge of the human anatomy may be acquired to a high degree, qualifying its possessor to testify as an expert witness although he is neither licensed nor registered as a doctor of medicine.

It is a matter of common knowledge, that in many professions other than medicine, the use of the X-ray is familiar, and that it is read in connection with the human anatomy; and, therefore, one informed on that subject is not disqualified to testify as an expert witness thereon merely because he is neither licensed nor registered as a doctor of medicine.

At the trial of the action above described, it was error for the trial judge, when an offer was made by the defendant of a witness as an expert on matters relating to the human spine, its functions or any injuries to it as shown by X-ray pictures, to rule, "I don't think that a man who, for the purpose of giving expert testimony on medical or surgical or anatomical question, confessedly is not a doctor of medicine, can in any manner qualify to testify."

TORT, with a declaration described in the opinion. Writ dated January 8, 1925.

In the Superior Court, the action was tried before *Callahan,* J. Material evidence and exceptions by the defendant

are stated in the opinion. There was a verdict for the plaintiff in the sum of $1,400. The defendant alleged exceptions.

*A. T. Holmes,* of Wisconsin, for the defendant.

*M. L. Welcker & J. D. Ross,* for the plaintiff, submitted a brief.

PIERCE, J. The plaintiff's amended declaration is in substance as follows: " . . . the defendant held himself out as competent to treat and cure her as a physician of the malady from which she was then suffering; that the defendant did undertake to treat and cure her said malady; and the plaintiff says that the defendant treated her in an unskillful, careless and negligent manner, whereby the plaintiff was seriously and permanently injured and was caused pain and suffering and anguish of body and mind, to the great damage of the plaintiff." The answer is a general denial. The jury returned a verdict for the plaintiff. At the close of the evidence the defendant moved in writing for a directed verdict upon the ground that upon all the evidence the plaintiff was not entitled to recover. This motion was denied and the defendant duly excepted.

In June or July and again in September, 1924, the plaintiff consulted the defendant, complaining of soreness and stiffness of the neck, pains in the back, dizziness, numbness in the limbs, noises in the head and buzzing in the ears. She "understood at that time that . . . [the defendant] was a chiropractor and that he was not a surgeon nor a medical man, but a chiropractor giving treatments or adjustments." Subject to his exception the defendant answered "No" to the question formulated by the presiding judge, "Were you lawfully authorized to practise medicine within this Commonwealth and were you registered for such purpose?" The judge stated, "That question and answer are admitted as one step of the plaintiff's offer to prove negligence."

The defendant testified in part: "My business is chiropractor . . . . On the windows of my office and doors I have the letters 'E. S. Grandchamp, Chiropractor,'" and "have been engaged in the practice of chiropractic about three years" in Holyoke, Massachusetts. "I made a chiropractic examination of Mrs. Whipple. It consisted of a history of

the case, palpation, the finding of the vertebra from the back of the skull to the diaphragm along the spine." After the examination the defendant explained to Mrs. Whipple the relation of the spine to the brain in great detail, and apparently with great care, that she should understand what was said. He further testified he then told her that, in order to secure the best results, there were three conditions on which he would insist before accepting the case, "first, — steady and regular adjustments as . . . [he saw] fit to give, second, — no medicine to be taken while under chiropractic adjustment without telling . . . [him], third, unless she was perfectly willing to give nature or the adjustments all the time required that she need not start taking adjustments," and "She consented to this."

On Saturday night, September 13, 1924, in answer to a telephone call the defendant went to the home of Mrs. Whipple and after a conversation as to her condition said he would give her an "adjustment." By his direction she knelt on a pillow with her chest against another pillow on a chair and her head sideways, "that position rendering the spine in a horizontal position." Then the defendant "took his right hand over his left and held it an inch or two above her neck and came right down on her neck with all the heft he could put on it." On Saturday night, when the condition of the patient was not relieved, the defendant said "if we do not get results within twenty-four hours I would suggest for your own sake to see what a medical man or surgeon can do. Chiropractic will not relieve you." On Sunday morning the defendant, with the assent of Mrs. Whipple, went to the office of Dr. Genest and "asked him if he would come up and see the patient." Dr. Genest, in the presence of the defendant, after an examination to ascertain the trouble said the only thing to do in this case was to get an X-ray. He made an appointment at the Holyoke City Hospital with Dr. Farr, a member of the hospital staff in the position of radiologist. Dr. Farr was dead at the time of the trial. Mrs. Whipple was X-rayed at the Hospital by Dr. Farr. After the X-ray was taken a plaster cast was put on her neck in the

operating room of the hospital, and the defendant then drove her home.

There was undisputed evidence that X-ray photographs taken in the hospital laboratory, as these were, are considered hospital property; that they are not taken except on the order of the physician or surgeon; that the X-ray pictures themselves are indexed, and numbered as a part of the hospital records; that from the pictures the radiologist makes findings in writing, which are a part of the X-ray laboratory and held there as part of the records of the hospital. Subject to the exception of the defendant, which is not argued and therefore deemed waived, the judge admitted the report of the findings on the X-rays by Dr. Farr and the pictures, which together constitute the hospital record. The report is in these words: "Name, Whipple, Mrs. Nancy. Address, 3 Fairfield Avenue. Part of body, cervical spine. Dr. Genest. Diagnosis, finding, fracture of the transverse process of the second cervical vertebrae of right side, with a very little bowing of same. Date, 9/14/24. Index number, 7845." It was agreed that Dr. Farr dictated the report to Miss Haggerty. It was in evidence, and not disputed, that one William O. Mulvenny, who had been an X-ray technician nearly twenty years, had been connected with the Holyoke City Hospital as such for two years. His work was to take pictures in connection with the radiologist, Dr. Farr. He identified the X-ray exhibits as pictures of Nancy Whipple taken by him for Dr. Farr in September, 1924. The evidence was relevant in support of the contention of an injury to or fracture of the second vertebra; and was admissible in evidence as a record of the hospital treatment and medical history of the Nancy Whipple case. G. L. c. 111, § 70. G. L. c. 233, § 79.

It was decided in *Commonwealth* v. *Zimmerman*, 221 Mass. 184, that one holding himself out as a chiropractor is engaged in the practice of medicine as that term is used in R. L. c. 76, § 8, now G. L. c. 112, § 6; St. 1927, c. 137, and is required to be licensed if the services which he renders, or which he holds himself out as having the capacity to exercise, fall into any part of the entire field of the science of medicine or

surgery. *Commonwealth* v. *Dragon*, 239 Mass. 549. The defendant held himself out as competent to treat the ailments of the plaintiff according to the methods, rules and principles of chiropractic; and offered at the trial to prove that "he did possess the learning and skill, and does possess the learning and skill, possessed and exercised by chiropractors practising in this and similar communities." The offer of proof was refused rightly. The defendant in his treatment of the ailment of the plaintiff was exercising his calling as a chiropractor in a matter within the field of medicine or surgery, and while so acting was not within any one of the exempted schools, classes, persons or situations enumerated and described in R. L. c. 76, § 9 (G. L. c. 112, § 7). His acts therefore were unlawful, as would be like acts of any associate members of the school of medicine called chiropractic. *Commonwealth* v. *Zimmerman, supra.*

The unlawful acts of the defendant did not become lawful as between Mrs. Whipple and himself by reason of her assent to the exercise of such acts in her behalf, or by reason of the alleged fact that a school of medicine justified them by its rules and principles of practice. The undertaking of a physician is that he will treat his patient, if he may lawfully do so, according to the system or school which he professes or avows, and that he will use due care and skill according to the practice of that system or school of medicine in the community where he practises his profession. *Carey* v. *Mercer*, 239 Mass. 599. *Chesley* v. *Durant*, 243 Mass. 180. The purpose of the Legislature in enacting the statute before us was not merely to provide a penalty for its violation, but equally to protect the public from ignorant and incompetent practitioners. The statute therefore must be construed as intended to afford relief by way of damages to all persons suffering harm where the violation of the statute is the proximate cause of their injuries. *Parker* v. *Barnard* 135 Mass. 116. *Gately* v. *Taylor*, 211 Mass. 60, 64.

There was evidence at the trial amply sufficient to warrant the jury in finding that Mrs. Whipple suffered some degree of physical harm by reason of the "adjustment" treatment which the defendant admitted he gave her in an attempt to

relieve her ailments; as in finding also, a proximate causal connection between the acts of the defendant in violation of the statute and the harm which Mrs. Whipple sustained in consequence of the defendant's practice upon her of the methods of the chiropractic school of medicine or system of practice. The evidence offered to prove that the defendant possessed and exercised that degree of learning and skill ordinarily possessed by chiropractors in the community where he and Mrs. Whipple lived was properly rejected: it was not relevant to prove the acts done were lawful or that they were in themselves and apart from the practice of the school of chiropractics exercised with reasonable skill and care. The motion for a directed verdict was denied rightly.

The judge instructed the jury in part: "that if this defendant was unlicensed to practise medicine . . . he cannot escape responsibility for any negligence such as I will describe in a few minutes by showing that he called himself a chiropractor, rather than a physician, by showing that his system of treatment had a distinctive name, — chiropractic, — or by showing that he and the patient entered into a contract for the use and receipt of this particular system of treatment. That is, if he undertakes to practise medicine and he does so contrary to the law, he cannot escape civil responsibility for negligence, such negligence as a physician would be held for, by pleading either that he was not a physician or that he made a contract to treat the patient according to a distinctive system not recognized by the profession of medicine." This instruction was more favorable to the defendant than he was entitled to; and the same is to be said of the instruction: "So when this defendant undertook to apply medical treatment, if he did undertake to apply medical treatment, there was an implied undertaking on his part that he had, and would bring to the performance of his undertaking, not only due care and skill, but that degree of skill and capacity ordinarily possessed by the duly licensed and competent physician of average skill and ability in his locality. That is, the degree of care and skill required of him is not to be ascertained and determined by ascertaining what degree of care and skill a

chiropractor might exercise. He is held up, as I construe the law, as I instruct you, to the degree of skill and ability which the physician of ordinary ability and the physician of ordinary experience possessed in his locality."

The refusal of the judge to receive the testimony of one James G. Greggerson as an expert on matters relating to the human spine, its functions or any injuries to it as shown by X-ray pictures, for the reason that, "I don't think that a man who, for the purpose of giving expert testimony on medical or surgical or anatomical question, confessedly is not a doctor of medicine, can in any manner qualify to testify" was error, and was prejudicial to the contention of the defendant that the X-ray pictures admitted in evidence did not show an abnormal condition of the second cervical vertebra, which medical witnesses for the plaintiff had testified they did show. It is plain that knowledge of the human anatomy may be acquired to a high degree from a student of that subject, although such a person is neither licensed nor registered as a doctor of medicine; and it is equally clear, as matter of common knowledge, that in many professions other than medicine, the use of the X-ray is familiar, and that it is read in connection with the human anatomy.

We have considered all questions which are raised by the record. It follows that the exception saved to the rejection of the testimony of Greggerson for reasons given by the judge is sustained. All other exceptions are overruled.

*Exceptions sustained.*