# GREGORY LaBELLE v. MERLE O. SWANSON.

78 N. W. (2d) 358.

July 13, 1956—No. 36,836.

*Clifford W. Gardner* and *Robert J. Monson,* for appellant.
*Doherty, Rumble & Butler, R. J. Leonard,* and *Joseph Finley,* for respondent.

MATSON, JUSTICE.

Appeal is from an order denying plaintiff's blended motion for judgment notwithstanding the verdict on the issue of liability and for a new trial on the issue of damages or, in the alternative, for a new trial on all issues.

This action is for damages for injuries sustained by plaintiff when he fell from a scaffold while washing windows. The verdict was for the defendant. Plaintiff and a fellow workman, Joseph John, both employed by the Reliable Window Cleaning Company, were washing windows on the outside of the state highway department building located at 1246 University Avenue, St. Paul. In washing the windows above ground level it was necessary to use a scaffold suspended from the roof by ropes and pulleys since the windows were too wide to use safety belts. The method commonly used to assemble the scaffold is to have one man go up to the roof of the building and pull up, by means of a rope, two hooks which are then placed over the part of the wall extending above the roof.

Two ropes are then threaded through two pulleys, one attached to each of the hooks. One end of each rope is attached to the scaffold while the other end is placed in a barrel which remains upon the ground for the purpose of storing the excess rope. As the scaffold is raised the length of this excess rope increases and when it is lowered the length diminishes.

At approximately 1:30 p. m. on April 16, 1953, plaintiff and John placed the scaffold in a position to enable them to wash the windows above an entrance driveway extending from the basement garage of the building to University Avenue. The driveway, which was 17.6 feet wide, was flanked on the west side by a retaining wall about five feet high and on the east side by a five-inch-high curb. The retaining wall and curb separated the driveway from the lawn in the front of the building. The barrel used to store the rope attached to the west end of the scaffold was placed on the raised lawn area beyond the five-foot retaining wall. The other barrel was placed some distance east of the curb on the east side of the driveway. The scaffold was raised and plaintiff and John were washing windows on the fourth floor of the building (including the basement as one floor). Plaintiff occupied the east end of the scaffold. On the driveway below next to the east curb stood two automobiles, one about one foot behind the other and both facing north toward University Avenue.

Defendant, who was employed by the state highway department, in the course of his duties had to use a car to go to another building. One Cernia, who had charge of the state highway department's cars, directed defendant to take the hindmost of the two cars standing next to the east curb of the driveway. Defendant backed the rear car up, drove around the car in front of him, and proceeded out of the driveway. In the process of backing, the rope on the east end of the scaffold somehow became entangled in defendant's car. As defendant drove northerly out of the driveway to University Avenue where he turned in a westerly direction, the rope came out of the barrel; threaded through whatever caught it on defendant's car; and finally pulled taut. The result was that the east end of the

scaffold was pulled outward from the building wall; the easterly supporting hook on the roof came loose whereby the east end of the scaffold dropped down so that the scaffold assumed a perpendicular position; and plaintiff was thrown from the scaffold to the concrete driveway below. This fall caused the injuries for which he seeks damages in this action.

On this appeal we have occasion to consider only the following issues: (1) Whether the trial court erred in restricting the jury's consideration of negligence to the sole question of whether the defendant was negligent *in the manner in which he backed up his car* and whether such negligence, if any, was the proximate cause of the entanglement of the rope with the car; (2) whether the court erred in failing to instruct the jury that a violation of M. S. A. 169.31, and also of a city ordinance, constituted negligence; and (3) whether it was an abuse of discretion to permit a part of a deposition to be used for impeachment purposes without admitting the entire deposition into evidence.

■ The court erred in precluding the jury from considering whether the defendant was negligent in any way *after* the rope became entangled in the car. The jury was instructed that:

"* * * the evidence in this case presents for your consideration *only the question whether the defendant was negligent in the manner in which he backed his automobile,* and whether that negligence was the proximate cause of the entanglement with the rope." (Italics supplied.)

"* * * the distance traveled by the defendant with the rope entangled in his car, are [is] immaterial on either of the issues that are finally involved in this case. * * * how far he traveled before discovering the rope caught in his car, have [has] no ultimate bearing on the question of whether the entanglement was caused by the negligence of the defendant. *The evidence does not warrant any finding that the defendant knew that his car was entangled with the rope until he got out on University Avenue and stopped his car.*" (Italics supplied.)

The restrictive charge in effect directed a verdict on the issue of whether defendant had been negligent *after* he had backed his car and after the rope became entangled with the vehicle. Taking, as we must, the evidence in the light most favorable to the plaintiff upon this aspect of the negligence issue which was thus removed from the jury's consideration, we hold that the trial court erred. Upon the evidence the jury could reasonably have found that the defendant was negligent in failing, *as he proceeded forward,* to discover that he was pulling the rope with him. The jury could conclude that defendant ought reasonably to have known that the windows over the driveway were being washed from a suspended scaffold and that the ropes were hanging downward to the ground. Both the rope barrels and the hanging ropes were in his plane of vision and both bespoke need for caution in moving a vehicle in their proximity. He was familiar with the driveway and should have known that in turning the car to back up, preparatory to passing the vehicle ahead, the rear overhang of his car would project over the five-inch curb and come in contact with the rope or the rope barrel. The jury could find that the danger of becoming entangled with the ropes was sufficiently patent to a driver in the exercise of ordinary care that he ought to have been alert and watchful, not only as he was backing up *but as he was proceeding forward,* to ascertain if the rope had caught on his vehicle. The duty to look continued until he was sufficiently far ahead to enable him to obtain—through the rear windows or otherwise—such a clear view of the driveway surface that he could see whether he was free and clear of the rope. Although defendant testified that he looked to the rear when he backed up and that, when he "cut out of the place where the car was parked" *after he had backed up,* he *again* "looked back to see if there was anything coming out of the driveway," the jury could reasonably find that these two observations were taken at a time and place when they were ineffective in disclosing the hazardous situation. A motorist's observation for the purpose of discovering hazards, which the ordinarily prudent man would reasonably anticipate, presupposes that, in the exercise

of ordinary care, the observation will be taken at a time and place when it will be effective. The jury could find that defendant's observation would not be effective until the car had moved some distance forward.

There is other evidence from which the jury could infer that defendant ought reasonably to have become aware that something was amiss before it was too late to avoid the accident. The scaffold rope, which was practically new, was cut or upbraided over a length of 22 feet as it was pulled or threaded through some part of the moving car. It could be reasonably inferred that the noise or vibration caused by a rope slipping over the rear bumper, fender, or axle ought to have apprised an ordinarily prudent driver that something demanded his further and immediate inspection. Both the plaintiff and John testified that they began screaming and yelling as the defendant proceeded out of the driveway. Moreover, two witnesses, who were parked across University Avenue somewhat beyond the place where defendant stopped his car, testified that they heard a scream coming from the direction of the highway building. Other persons working inside the building also testified that they heard screams. The jury could conclude that if the defendant, despite the fact that his windows were closed, had been reasonably alert he should not merely have sensed the scraping of the rope but have heard the screams and brought the car to an immediate stop. The evidence relating to defendant's conduct, after the rope had become entangled, is subject to such diverse inferences as to present a jury question.

■ Where issues of fact as to both negligence and contributory negligence are submitted to the jury and there is a general verdict, plaintiff is entitled to have the verdict set aside and to have a new trial when the issue of negligence was submitted to the jury on an erroneously and prejudicially restricted theory unless it conclusively appears as a matter of law that defendant was entitled to the verdict upon the issue of contributory negligence.[1] Since the

[1]See, State Bank v. Strandberg, 148 Minn. 108, 180 N. W. 1006; Ohrmann v. Chicago & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806; Anderson v. Birkeland, 229 Minn. 77, 38 N. W. (2d) 215; 14 Dunnell, Dig. (3 ed.) § 7174.

verdict was general, we cannot know whether the jury based its verdict on an erroneous theory of negligence or on contributory negligence. We cannot say that plaintiff was guilty of contributory negligence as a matter of law. The evidence as to contributory negligence was conflicting and was properly submitted to the jury. There must therefore be a new trial on both issues.

We shall consider only such additional issues as are likely to be involved upon such new trial.

■ The trial court did not err in excluding from evidence a copy of Ordinance No. 10032, Proceedings of the Council of the City of St. Paul 1953, p. 55, providing:

"Within the 'Congested District' except on One-Way streets, no vehicle shall make a left turn upon entering or leaving a parking lot or garage."

Likewise there was no error in withholding from the jury's consideration the effect of a violation of § 169.31, which provides:

"The driver of a vehicle within a business or residence district emerging from an alley, driveway, or building shall stop such vehicle immediately *prior to driving onto a sidewalk or into the sidewalk area* extending across any alleyway or private driveway." (Italics supplied.)

Not every violation of a statute or of an ordinance constitutes negligence. A violation of a legislative enactment can be held evidence of negligence only when the plaintiff is a member of a class for whose protection the statute or ordinance was enacted and then only if plaintiff's injury (1) involves an invasion of the particular interest protected by the enactment, (2) was caused by the particular hazard or form of harm against which the enactment was designed to give protection, and (3) if it was proximately caused by the violation.[2] Needless to say, even if these essential elements are present, plaintiff's recovery may be barred by his own negligence.

[2]Standafer v. First Nat. Bank, 236 Minn. 123, 52 N. W. (2d) 718; as to the injury rule generally, see Restatement, Torts, § 286, and *comments a to j.*

In this case, plaintiff is not a member of any class for which either the ordinance or the statute was enacted. Obviously, the ordinance was enacted to protect other motorists (and also perhaps passengers occupying the automobile attempting to make the prohibited left turn) from the particular hazard of injury and property damage caused by a collision resulting from a driver's making a left-hand turn while entering or leaving a parking lot in a congested district. Section 169.31 is clearly intended to protect that class of pedestrians who are using a sidewalk or sidewalk area which extends across an alley or private driveway, and from the particular hazard resulting from the sudden or unexpected emergence upon a sidewalk of automobiles from alleyways or private driveways. It would indeed be a flagrant violation of legislative intent to hold that either of these enactments was designed to protect persons standing upon a scaffold removed from a sidewalk area who cannot be described as either motorists or pedestrians.

■ Defendant, for the purpose of contradicting or impeaching the testimony of the plaintiff, read portions of a deposition in which plaintiff was the deponent, and cross-examined him thereon to discredit him as a witness by showing that his prior deposition statements were inconsistent with his oral testimony. This was permissible as to material facts under Rule 26.04(1) of Rules of Civil Procedure. No part of the deposition was admitted as original or independent evidence. We find no error since the trial court limited the partial use of the deposition to those portions which pertained to material matters and which were inconsistent with plaintiff's testimony. Pursuant to Rule 26.04(1) a part of a deposition, even though it may not be admissible for other purposes, may be read and used to contradict or impeach a deponent as a witness (1) if its use is limited to material matters only,[3] (2) if the portions used are inconsistent with deponent's oral testimony, and (3) if the portion used may, with justice to the opposing party, be separated from the

---

[3] Rule 26.04(1) of Rules of Civil Procedure.

remainder or context without destroying the sense of deponent's statements.[4]

■ Clearly, a part of a deposition cannot properly be admitted when it would convey a meaning different from what it would if read with the remainder.[5] If only a part of a deposition is read and used by a party for the purpose of contradicting or impeaching a deponent's oral testimony, an adverse party has the right to require him to include all parts of the deposition which are relevant to the parts so used for impeachment,[6] but this right does not of itself justify or permit such adverse party to introduce the remainder of the deposition which is not relevant to the impeachment *and which is not otherwise admissible.* Where only a part of a deposition is used for impeachment, any party, pursuant to Rule 26.04(4), may introduce the other parts but only insofar as such other parts of the deposition are admissible under the applicable rules of evidence.[7] The trial court did not err in excluding the deposition as a whole.

The order of the trial court is reversed, and a new trial is granted in accord with this decision.

Reversed.

[4]See, Annotation, 134 A. L. R. 212, 227.

[5]16 Am. Jur., Depositions, § 118.

[6]2 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 26.04, p. 47; 4 Moore, Federal Practice (2 ed.) par. 26.31; 7 Cyclopedia of Federal Procedure (3 ed.) § 25.119.

[7]See opening paragraph of Rule 26.04 as modified by Rule 26.04(2, 3) and the concluding paragraph of Rule 26.04; 2 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 26.04, p. 49; 7 Cyclopedia of Federal Procedure (3 ed.) §§ 25.119 to 25.122; 2 Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 654. As to the right of an opposing party to make objections to admitting into evidence any deposition, *or part thereof,* see Rule 26.05; 4 Moore, Federal Practice (2 ed.) par. 26.34.