PRUDENCE MOLLOY, administratrix, *vs.* BENEDICT KIZELEWICZ.

Suffolk. November 7, 1961. — December 28, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Evidence,* Opinion: expert; Hypothetical question. *Negligence,* One owning or controlling real estate, Snow and ice. *Practice, Civil,* New trial. *Snow and Ice.*

In view of the testimony of a medical witness and medical records in evidence at the trial of an action for personal injuries sustained in a fall,

a certain hypothetical question asked of the medical witness in connection with the issue whether the injured person had sustained a fracture of the left femur as well as a right hip fracture as a result of the fall was so confusing and obscure that failure to exclude it was error prejudicial to the defendant.  [405–406]

On the record in an action for personal injuries sustained through falling on a patch of ice on a sidewalk in front of the defendant's premises, a finding was amply warranted that the ice was formed by the freezing of water which was discharged from a downspout on such premises onto the lawn and thence flowed "across the ground" onto the sidewalk. [408]

A new trial of an action for personal injuries confined to the issues of the extent of the injuries and the damages to be awarded therefor was ordered by this court on a bill of exceptions by the defendant, following a verdict for the plaintiff, which showed no error with respect to liability but only prejudicial error in allowing a certain question relating to the injuries.  [408]

TORT for personal injuries by Thomas A. Molloy.   Writ in the Superior Court dated January 10, 1955.

The plaintiff died after trial and the administratrix of his estate was substituted as plaintiff.   A motion for new trial having been allowed, there was a second trial before *Swift,* J., resulting in a verdict for the plaintiff.   The defendant alleged exceptions to a question asked of a witness and to the denial of his motion for a new trial.

*John C. Carr, Jr., (John P. Curran* with him,) for the defendant.

*Timothy J. McInerney,* for the plaintiff.

WHITTEMORE, J.   The plaintiff's intestate, Thomas Molloy, sixty-six years of age, a retired employee of the Metropolitan Transit Authority, on December 27, 1954, fell on ice on the sidewalk in front of the defendant's premises in Dorchester, and was injured.   At a second trial of this action of tort the plaintiff had a verdict which was reduced by a remittitur of $5,000 to $17,642.

1.   The defendant urges error in respect of a hypothetical question put to Dr. George W. Papen, "a duly qualified physician specializing in surgery."   The issue was whether Molloy's injuries ascribable to the accident included a

broken left femur. Records of The Boston City Hospital were in evidence. Dr. Papen read entries in respect of a fracture of the right acetabulum (hip socket) as shown by X-rays taken on December 27, 1954. The record stated that Molloy was "placed on bed rest and treated symptomatically and on 1/2/55 . . . was discharged improved to be followed in the out-patient clinic."

Dr. Papen then read the out-patient records which recorded the patient's discharge from the hospital, "having sustained 'fractured pelvis' on 27 Dec. '54. Was on crutches when discharged. Now walking on 1 crutch 'because I can walk better that way.'" The out-patient records included two typed reports of X-ray diagnoses. The first, on February 21, 1955, of the pelvis, recorded: "Negative report. . . . Some demineralization . . . consistent with the age of the patient . . . . Calcification . . . is . . . noted. IMP: No fracture seen." The second report, dated March 1, 1955, recorded: "Lt. Hip: There is some deformity in the neck of the left femur, consistent with an old, healed fracture, probably a subcapital fracture. No evidence of bone reaction, resorption or destruction is noted at this time. IMP: Fracture of the left hip, healing well." A longhand entry of March 1, 1955, in the out-patient record read, "Except for slight pain in rt. thigh, pt. is asymptomatic. However, X-rays [it later developed that these were taken on March 1, 1955] show suspicious osteolytic-like areas in left hip (acetabulum and neck). . . . Return in one wk. at which time official X-ray reading should be available."

It is inferable that no one connected with the litigation knew of the left hip injury until the second trial.

Dr. Papen testified that he saw the patient in April, May, June, July, and August, 1955; in August Molloy's "right hip was still stiff after he walked on it a long time"; X-rays taken for Dr. Papen on June 20, 1955, "showed no evidence of fracture or dislocation of the hip at that time. The fracture site was well healed." On cross-examination, Dr. Papen testified that Molloy never complained to him of

pain in the left hip; he gave Molloy tests for "flexion and abduction to both hips and never observed anything with the left hip"; he was not asked to express any opinion at the previous trial about the left hip; the March 1, 1955, X-ray, "according to the records" showed a subcapital fracture of the neck of the left femur but "he . . . had never seen that X-ray and never knew anything about the subcapital fracture until now when he was testifying"; all that he knew about the left hip was "what was in the outpatient record as he read it today. [H]owever, from the records and from looking at X-rays he was of the opinion that the type of injury described to the left femur could have been caused at the time of the accident . . . it is probable that the left femur fracture could have been undetected."

On redirect examination Dr. Papen was asked to examine in a view box "the Boston City Hospital X-rays previously referred to." The witness "first examined the X-ray taken December 27, 1954, and pointed out the fracture of the right acetabulum appearing in that X-ray. The witness was then asked the following question: 'Now . . . considering not only the in-patient reports of the Boston City Hospital, plus the X-rays of the Boston City Hospital, plus your own examinations and taking of history from this patient, as to whether or not you have an opinion as to whether this patient, the late Thomas Molloy, had a fracture of the right acetabulum as demonstrated in this X-ray on December 27 at The Boston City Hospital and a fracture of the left subcapital area of the left femur — whether or not you have an opinion as to whether or not those fractures are causally related to the fall of December 27, 1954.' " The defendant objected and excepted. Dr. Papen, having answered that he had an opinion, was asked for it, and answered "That the fracture of the right acetabulum and the subcapital fracture of the left femur happened at the same time."

The hypothetical question was confusingly double and, as shown below, risked the prejudicial ambiguity which resulted from the answer. The failure to exclude it was

prejudicial error. See *Brown* v. *United States Fid. & Guar. Co.* 336 Mass. 609, 613–614.

We assume that the report of the March 1, 1955, X-rays was some evidence of a fracture at a recent time, notwithstanding the words "old, healed fracture." The hospital records came into the case without objection and they are evidence of the medical facts which they purported to state. *Whipple* v. *Grandchamp,* 261 Mass. 40, 44. *Caccamo's Case,* 316 Mass. 358, 362. *Cohen* v. *Boston Edison Co.* 322 Mass. 239, 241. G. L. c. 233, § 79.

The report of the March 1 X-rays was, however, possibly self contradictory and the jury could have regarded it of little weight to show a recent fracture in the absence of medical testimony to amplify and explain it.[1]

In the circumstances, it would have helped the plaintiff to have adduced the opinion of an expert, on adequate data, that Molloy in 1955 had a recent left as well as a recent right fracture, both causally related to the fall on December 27, 1954. Dr. Papen's answer to the question is subject to being construed as such testimony.

If it is so construed, however, the answer, by necessary implication, includes Dr. Papen's construction of the March 1, 1955, report, based on X-rays of that date, as showing to him a recent fracture of the left femur, even though he had not seen the X-rays. The basis for Dr. Papen's making such a construction of the hospital record is not clear, but in any case the question was not adequately addressed thereto.

Alternatively, Dr. Papen may have thought he was being asked to assume that the March 1 X-rays and the record thereof showed a recent fracture of the left femur. If the witness thus narrowly understood the question, the broader implications of the answer were necessarily prejudicial. Dr. Papen's care, in the earlier stages of his examination, to show that his knowledge of the left hip injury was second-

---

[1] No witness explained what "old, healed fracture" or "healing well" meant in context. In this connection we note an entry in the hospital record: "30 Dec. 1954 Patient has frac. rt. acetabulum which appears old by X-ray. Will maintain on bed rest until symptoms subside. R. J. Dignan."

hand tends to suggest that he construed and answered the hypothetical question in this more limited sense. But, however he construed it, the defendant was prejudiced.

The plaintiff asks us to construe the bill of exceptions to show that Dr. Papen examined the March 1, 1955, X-rays, or one such, before answering the question. We are unable to do this. The bill of exceptions is regrettably imprecise, but we understand the statement of Dr. Papen's testimony as follows: After his testimony that he had never seen "that X-ray" of March 1, 1955, and knew of the left hip injury only from the record as he read it, he did not examine any X-rays up to the point at which he was asked "to examine in a view box the . . . X-rays previously referred to." His testimony, prior to beginning that examination, that "from the records and from looking at X-rays he was of the opinion that the type of injury described to the left femur could have been caused at the time of the accident," did not show or contain a reference to an examination by him of the March 1 X-rays. It was, rather, a reference to his experience generally in looking at X-rays. It was "the type of injury described" in the hospital report, and not an injury which he himself saw evidenced in a March 1 X-ray, to which he referred. Dr. Papen, as we read the bill, did not look at a March 1 X-ray in the view box. The bill is explicit that he "first examined the X-ray taken December 27" and "was then asked the . . . question." The reference in the question to "X-rays" does not negative the other indications that the witness was not answering it from his own examination of any March 1 X-ray. The words "considering . . . the in-patient reports . . . plus the X-rays of the Boston City Hospital" were in context reasonably construable as including by way of reference to the March 1 X-rays only the record description thereof. On recross-examination Dr. Papen was examined "as to the out-patient clinic X-ray, taken February 21, 1955, of the pelvis and admitted that it was impossible to determine . . . which was the right or left acetabulum or hip." There is no further reference to the March 1 X-rays.

Four of the five X-rays which are before us pursuant to the bill[1] are dated "12-27." The fifth is dated "6-20-55."

The answer, of course, was not directly responsive to the question; it does not expressly connect either injury to the accident. There was, however, no motion to strike and we do not deal with the defect in the answer as a ground of exception. But the ambiguity of the answer may have resulted from the objectionably obscure question.

2. There is nothing in the defendant's point that the motion for a new trial should have been allowed because of the weakness of the evidence of liability. The bill states that a "drainpipe on one side of the [defendant's] premises collected melting snow water from the roof, discharging it onto the lawn from whence it flowed onto the sidewalk . . . where, on the day of the accident, it froze into a patch or square of ice, four or five square feet . . . with an irregular rutted surface." A police officer described the ice as "running from the open end of the drain pipe out across the ground, thence across the sidewalk . . . ." Another police officer testified that "the ice was continuous from under the drain pipe across the ground and the sidewalk, out to the street." On this evidence the defendant may not contend with any conviction that "it would be . . . impossible . . . to determine that the ice . . . was formed from water from the downspout." See Delano v. Mother's Super Market, Inc. 340 Mass. 293, 296, and cases cited.

3. The error in the hypothetical question requires that the defendant's exception be sustained. But the issues of Molloy's fall, and the defendant's liability for such injuries as he sustained, have been determined for the plaintiff without error shown in respect thereof, and need not be retried. The retrial will be confined to the issues of the extent of Molloy's injuries and the damages to be awarded therefor. G. L. c. 231, §§ 124, 132. See Simmons v. Fish, 210 Mass. 563, 564–568.

*So ordered.*

---

[1] "[Certain exhibits and the hospital records] together with X-ray plates need not be reproduced but will be produced at the argument . . . and may be referred to . . . ."