RAYMOND KRONZER AND ANOTHER v. FIRST
NATIONAL BANK OF MINNEAPOLIS.
IVAN H. DART, INDIVIDUALLY AND AS SPECIAL
ADMINISTRATOR OF THE ESTATE OF
ELSA W. DART, THIRD-PARTY DEFENDANT.

235 N. W. 2d 187.

September 26, 1975—No. 45413.

*Yngve & Reiersgord* and *Thomas E. Reiersgord,* for appellants.
*Dorsey, Marquart, Windhorst, West & Halladay* and *Edward
J. Schwartzbauer,* for respondent First National Bank.
*Thornton P. Anderson,* for respondent Ivan H. Dart.

PETERSON, JUSTICE.

Plaintiffs appeal from summary judgment granted defendants and from an order denying their own motions for summary judgment[1] in this action to recover damages arising out of the alleged unauthorized practice of law by defendant bank with respect to the drafting of certain trust instruments. The evidence upon which the cross-motions for summary judgment were submitted is essentially undisputed.

Raymond H. Dart, creator of the trust involved in this action, though blind from childhood, was an attorney practicing in Litchfield, Minnesota, from 1909 to 1955. He also served as probate judge in Meeker County between 1928 and 1932.

After the death of his wife, Dart moved to Minneapolis in 1955 to live with Nellie Kronzer, his sister and the mother of plain-

---

[1] The order denying plaintiffs' motion for summary judgment is not an appealable order. Rule 103.03(i), Rules of Civil Appellate Procedure. The denial of that motion, however, is properly before us for review on appeal properly taken from the judgment entered in favor of defendants. Rule 103.04(2), Rules of Civil Appellate Procedure.

tiff Raymond Kronzer. Dart's only other close relatives were his brother and sister-in-law, Ivan H. Dart, third-party defendant in this action, and Elsa Dart, now deceased.

On October 13, 1966, when he was 82 years old, Raymond Dart entered into a revocable inter vivos trust agreement with the First National Bank of Minneapolis as trustee. Raymond Dart was to receive all of the income and such principal as he might direct during his lifetime. After his death the corpus was to be divided into two equal parts, one to be held in trust for Nellie Kronzer with the income, and the principal under specified circumstances, to be paid her during her life. Upon her death Raymond Kronzer or his issue was to receive the remainder. The other half was to be held in trust for Ivan and Elsa Dart with the income, and principal as specified in the agreement, to be paid Ivan during his life and thereafter to Elsa during her life. Upon the deaths of Ivan and Elsa, one half of the remainder was to be distributed to the Nellie Kronzer trust, or, if Nellie was deceased, to Raymond Kronzer or his issue. The other half was to be distributed to certain relatives of Raymond Dart's deceased wife or, if they had died, to Raymond Kronzer or his issue.

In 1969, the trust instrument was amended to terminate the trust altogether at the death of Raymond Dart, leaving one half of the corpus to Nellie Kronzer and the other half to Ivan Dart.[2]

In 1970, the trust was amended a third time. This amendment again placed in trust the one-half share of the corpus that was to be distributed to Nellie Kronzer. She was made the income beneficiary for life and the trustee was also empowered to use the corpus for her benefit; but on her death, the trust was to terminate and the remainder to be distributed to Ivan Dart, to Elsa Dart if Ivan had predeceased Nellie Kronzer, and to relatives of Raymond Dart's wife if Elsa also had predeceased Nellie

---

[2] Also in 1969 a technical amendment to the trust instrument not here relevant was executed.

Kronzer.[3] Thus, plaintiff Raymond Kronzer would receive nothing.

The trust instrument and all of the amendments were drafted by lay employees of defendant bank. Raymond Dart was not represented by independent counsel but, from the outset of his relationship with the bank, chose to represent himself. Dart retired from active practice before this court promulgated rules requiring registration of all members of the bar in 1960.[4] After the rules were promulgated,[5] he did not register as a retired attorney.

Plaintiffs contend that at the time he executed the 1969 and 1970 amendments Mr. Dart suffered from cerebral arteriosclerosis, which deprived him of testamentary capacity, subjecting him to undue influence by Ivan and Elsa Dart. They also argue that Raymond Dart was incapable of fulfilling the attorney role in his dealings with the bank during this period and that bank employees stepped in to fill that role. Plaintiffs base their action on two separate legal theories: (1) The bank was guilty of negligence per se in engaging in the unauthorized practice of law contrary to statute, and (2) the bank was guilty of actual negligence in drafting amendments to the trust instrument while in possession of information that should have revealed that Raymond Dart was without testamentary capacity and was subject to undue influence. Plaintiffs sought actual damages equal to the value of Raymond Kronzer's expectancy under the original trust instrument.

Defendant bank joined Ivan Dart, individually and as special

---

[3] The amendment also provided that $5,000 in cash be distributed to Edith L. Fisher upon the death of Raymond Dart. Mrs. Fisher had been serving as Raymond Dart's housekeeper since Nellie Kronzer, who had previously cared for Mr. Dart, was placed in a nursing home a few months before the amendment was executed.

[4] 260 Minn. vii, as amended, 286 Minn. x.

[5] The rules do not exempt retired attorneys from the registration requirement but simply permit registration at a reduced fee.

administrator of the estate of his deceased wife, Elsa, as a third-party defendant. The bank bases its claim for indemnity on the theory that Ivan and Elsa Dart were the source of any undue influence and that they had a duty to reveal Raymond Dart's lack of testamentary capacity to the bank. Plaintiffs then entered into a hold-harmless agreement whereby they promised to indemnify Ivan Dart against all liability he might incur as a result of this action.

In addition to this action, plaintiffs commenced a separate action seeking a declaratory judgment that the amendments to the trust instrument were invalid. The two actions were consolidated for trial, but the action on the instruments was terminated in November 1971 by stipulation of settlement which provided that the bank pay plaintiffs in excess of $43,500 from the corpus of the trust. The stipulation provided that plaintiffs release all claims against the trust, but contained another clause expressly preserving plaintiffs' separate action against the bank. Both the stipulation and the distribution of the settlement from the trust funds were approved by the district court. The order of distribution, entered without objection on the part of the plaintiffs, expressly stated that the 1970 amended trust was the governing trust instrument. Plaintiffs now claim that they are entitled to recover from defendant bank, as exemplary damages, attorneys fees incurred by them in prosecuting the action on the instruments.

In granting defendant's motion for summary judgment, the trial court ruled that plaintiffs had failed to state a cause of action based on negligence per se and that plaintiffs' claim based on actual negligence was barred both by collateral estoppel and by the hold-harmless agreement. It also found that defendant bank was not entitled to recover attorneys fees from the third-party defendant and that plaintiffs were not entitled to recover from defendant bank their attorneys fees incurred in bringing the declaratory judgment action.

The issues before us on this appeal are: (1) Did plaintiffs

state a cause of action based on negligence per se? (2) Was plaintiffs' claim based on actual negligence barred by collateral estoppel? (3) Was plaintiffs' claim based on actual negligence barred by their hold-harmless agreement with Ivan and Elsa Dart? (4) Are plaintiffs entitled to recover as exemplary damages their attorneys fees from the action on the instruments? (5) Is defendant bank entitled to recover either from the corpus of the trust or from the third-party defendants its attorneys fees in this action? Because we conclude that the trial court properly resolved these issues, we affirm.

Plaintiffs' claim of negligence per se is bottomed on the proposition that defendant bank, in the course of its relationship with Raymond Dart, engaged in the unauthorized practice of law. In order to state a cause of action for civil liability arising out of such alleged unauthorized practice, plaintiffs must establish that (1) the bank's conduct was in violation of the unauthorized practice statute, (2) the unauthorized practice statute creates a duty of care to plaintiffs, and (3) the breach of the statute was the proximate cause of some injury suffered by plaintiffs. Cf. LaBelle v. Swanson, 248 Minn. 35, 78 N. W. 2d 358 (1956).

Minn. St. 481.02, subds. 1 and 2, prohibits natural persons, other than licensed attorneys, and corporations from drafting wills, instruments of trust, or other documents of testamentary disposition for another.[6] The bank contends, however, that its

---

[6] The statute provides in part: "Subdivision 1. It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law, * * * for or without a fee or any consideration, to prepare, directly or through another, for another person, firm, or corporation, any will or testamentary disposition or instrument of trust serving purposes similar to those of a will, or, for a fee or any consideration, to prepare for another person, firm, or corporation, any other legal document, except as provided in subdivision 3.

"Subd. 2. No corporation, organized for pecuniary profit, except an attorney's professional corporation organized under chapter 319A, by or through its officers or employees or any one else, * * * shall cause

conduct in preparing trust instruments for Raymond Dart fell within one of the statutory exceptions to the general prohibitions against unauthorized practice. Specifically, the bank relies on the following language found in Minn. St. 481.02, subd. 3:

"The foregoing * * * shall not prohibit any person from conferring or cooperating with a licensed attorney at law of another in preparing any legal document * * *."

Whether Raymond Dart was a "licensed attorney" who could properly represent himself in his dealings with the bank is open to question. Our statutes nowhere define the phrase "licensed attorney" but speak only in terms of "admission to practice" or "registration." The defendant bank argues that the statutory phrase includes one who would be entitled to practice but for his failure to register. It is true, as the bank points out, that the purpose of the registration system is to raise funding for the bar examination and for disciplinary proceedings and to maintain a current list of all attorneys "authorized" to practice law in the state.[7] Plaintiffs maintain that only a registered attorney may be a "licensed attorney." They note that the effect of failure to pay registration fees is suspension from the practice of law, subject to reinstatement upon payment of delinquent fees and penalties.[8]

The trial court did not decide whether the bank's conduct amounted to the unauthorized practice of law, perhaps because this issue may involve questions of fact regarding the exact nature of the relationship between the bank and Raymond Dart

---

to be prepared any person's will or testamentary disposition or instrument of trust serving purposes similar to those of a will, or any other legal document, for another person, firm, or corporation, and receive, directly or indirectly, all or a part of the charges for such preparation or any benefits therefrom; or shall itself prepare, directly or through another, any such document for another person, firm, or corporation, except as provided in subdivision 3."

[7] 286 Minn. x.

[8] 286 Minn. xii.

which are not suitable for determination on a motion for summary judgment. We do not decide this issue either. Notwithstanding the arguable impropriety of the bank's conduct, the validity of plaintiffs' claim of negligence per se turns upon more fundamental tort principles.

We next reach the question whether Minn. St. 481.02 establishes a tort duty of care, the breach of which gives rise to negligence per se.[9] Negligence per se based on violation of a penal statute is similar to actual negligence based on common-law principles. In both cases the failure to perform a legal duty constitutes negligence. The only difference is that the measure of legal duty for actual negligence is determined upon common-law principles while the measure of duty for negligence per se is fixed by the statute, so that its violation constitutes conclusive evidence of negligence. Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543 (1889). The trial court refused to apply Minn. St. 481.02 on the grounds that plaintiffs were not within the class of persons that the statute was designed to protect.

Not all penal statutes establish a tort duty of care under all circumstances. We have long followed the criteria set forth by the American Law Institute in Restatement, Torts 2d, in determining which statutes give rise to a civil duty.[10] Section 286 states:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an ad-

---

[9] Plaintiffs have also contended that violation of this statute gives rise to absolute liability. As the distinction between negligence per se and absolute liability based on statutory violation is of importance only in determining whether the bank would be entitled to indemnity against the third-party defendant, that aspect of plaintiffs' argument is discussed in connection with the indemnity issue.

[10] See, e. g., Lynghaugh v. Payte, 247 Minn. 186, 76 N. W. 2d 660 (1956); Standafer v. First Nat. Bank of Minneapolis, 236 Minn. 123, 52 N. W. 2d 718 (1952); Alsaker v. DeGraff Lbr. Co. 234 Minn. 280, 48 N. W. 2d 431 (1951).

ministrative regulation whose purpose is found to be exclusively or in part

"(a)   to protect a class of persons which includes the one whose interest is invaded, and

"(b)   to protect the particular interest which is invaded, and

"(c)   to protect that interest against the kind of harm which has resulted, and

"(d)   to protect that interest against the particular hazard from which the harm results."

The corollary found in § 288 is equally applicable. It provides:

"The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

"(a)   to protect the interests of the state or any subdivision of it as such, or

"(b)   to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

"(c)   to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

"(d)   to protect a class of persons other than the one whose interests are invaded, or

"(e)   to protect another interest than the one invaded, or

"(f)   to protect against other harm than that which has resulted, or

"(g)   to protect against any other hazards than that from which the harm has resulted."

Under these standards, whether Minn. St. 481.02 provides a standard of care applicable in this case is questionable. First, it might be argued that the statute is designed to protect the pub-

lic at large rather than a particular class of individuals.[11] If that was the intent of the legislature, then the statute should not be adopted as a duty of care here.[12] Second, the legislature may have intended the statute to protect only persons in privity with unauthorized practitioners and not third persons injured by unauthorized practice.[13] Third, the statute may be intended to protect only against the unskilled practice of law by untrained persons, in which case proof of actual negligence would be a prerequisite to plaintiffs' recovery.[14]

---

[11] There is language to this effect in our opinions in Gardner v. Conway, 234 Minn. 468, 48 N. W. 2d 788 (1951), and Cowern v. Nelson, 207 Minn. 642, 290 N. W. 795 (1940). But see, In re Estate of Peterson, 230 Minn. 478, 42 N. W. 2d 59 (1950).

[12] See, Restatement, Torts 2d, § 288(a) and Comment b; Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. 2d 450 (1946); Andrews v. Lofton, 80 Ga. App. 723, 57 S. E. 2d 338 (1950).

[13] There is language in our opinion in In re Estate of Peterson, 230 Minn. 478, 484, 42 N. W. 2d 59, 63, to suggest that Minn. St. 481.02 may be intended to protect "widows and orphans" from unskilled persons who attempt to draft wills. See, also, Biakanja v. Irving, 49 Cal. 2d 647, 320 P. 2d 16 (1958).

The majority of courts which have considered a similar question hold that strict privity of contract is not required in cases involving will drafting and that intended beneficiaries may sue an authorized attorney for professional malpractice in preparing the instruments. See, Lucas v. Hamm, 56 Cal. 2d 583, 15 Cal. Rptr. 821, 364 P. 2d 685 (1961), certiorari denied, 368 U. S. 987, 82 S. Ct. 603, 7 L. ed. 2d 525 (1962); Heyer v. Flaig, 70 Cal. 2d 223, 74 Cal. Rptr. 225, 449 P. 2d 161 (1969); Licata v. Spector, 26 Conn. Supp. 378, 225 A. 2d 28 (1966); Woodfork v. Sanders, 248 So. 2d 419 (La. App.), certiorari denied, 259 La. 759, 252 So. 2d 455 (1971); Schirmer v. Nethercutt, 157 Wash. 172, 288 P. 265 (1930). But see, Maneri v. Amodeo, 38 Misc. 2d 190, 238 N. Y. S. 2d 302 (1963).

See, McDonald v. Stewart, 289 Minn. 35, 182 N. W. 2d 437 (1970); Hoppe v. Klapperich, 224 Minn. 224, 28 N. W. 2d 780 (1947); Farmer v. Crosby, 43 Minn. 459, 45 N. W. 866 (1890).

[14] See, e. g., Janssen v. Mulder, 232 Mich. 183, 205 N. W. 159 (1925); Monohan v. Devinny, 131 Misc. 248, 225 N. Y. S. 601 (1927); Bute v. Potts, 76 Cal. 304, 18 P. 329 (1888); Brown v. Shyne, 242 N. Y. 176, 151 N. E. 197 (1926). Cf. In re Tug Management Corp. 330 F. Supp. 486

We need not decide, however, the difficult question whether we would adopt Minn. St. 481.02 as a standard of care in a proper civil case, for even if we were to do so, plaintiffs could not recover in this case. An essential element of plaintiffs' cause of action is proximate causation. The trial court found this element absent under these facts, and we agree.

We have long followed the "direct consequences test" of proximate causation, which is defined in Christianson v. Chicago, St. P., M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641 (1896), as follows:

"* * * Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

Applying this test to the facts of this case, we conclude that the bank's unauthorized practice of law could not have been the proximate cause of plaintiffs' injury. Raymond Kronzer's loss of his expectancy did not follow in any unbroken sequence of events from the bank's unauthorized practice of law. Rather, Raymond Dart's decision to change the trust constituted an intervening efficient cause. Had Dart not made that decision, Kronzer would have received the inheritance he had anticipated despite the fact that the trust documents were prepared in contravention of Minn. St. 481.02. See, In re Estate of Peterson, 230 Minn. 478, 42 N. W. 2d 59 (1950).

On the other hand, given Raymond Dart's desire to alter the trust, the result would not have been altered had a licensed attorney been engaged to draft the final amendments, unless that licensed attorney would have refused to draft them because he believed that Dart lacked testamentary capacity. In other words, by plaintiffs' own reasoning, only actual negligence on the part

(E. D. Pa. 1971). But see, Whipple v. Grandchamp, 261 Mass. 40, 158 N. E. 270 (1927); Harris v. Graham, 124 Okla. 196, 255 P. 710 (1927).

of the bank and not the violation of the statute can be the proximate cause of this injury.

We have had previous opportunities to consider a similar problem in a different context. In Mahowald v. Beckrich, 212 Minn. 78, 80, 2 N. W. 2d 569, 572 (1942), we considered whether negligence per se results from a violation of the driver's license statute. We held that the failure to obtain a license, as required by statute, was not the proximate cause of any injuries suffered in an accident in which the unlicensed driver was involved, stating:

"An unlicensed driver is neither barred from recovering for injuries received by himself in an automobile accident nor liable as a matter of law for injuries sustained by another, because there is no causal connection between his failure to comply with the licensing statute and the accident."

In Knutson v. Nielsen, 256 Minn. 506, 518, 99 N. W. 2d 215, 223 (1959), we reiterated this language. A number of other jurisdictions have considered the same problem in automobile accident cases involving unlicensed drivers and have reached the same result.[15] A similar rationale is found in many of the cases dealing with whether negligence per se arises from the violation of a professional licensing statute.[16]

The issue of proximate causation is determinative here. As-

---

[15] See, e. g., Reeve Bros. v. Guest, 131 F. 2d 710 (5 Cir. 1942); Strandt v. Cannon, 29 Cal. App. 2d 509, 85 P. 2d 160 (1938); Etheridge v. Guest, 63 Ga. App. 637, 12 S. E. 2d 483 (1940); Humbert v. Lowden, 323 Ill. App. 557, 56 N. E. 2d 323 (1944); Ruckman v. Cudahy Packing Co. 230 Iowa 1144, 300 N. W. 320 (1941); Tipton v. Estill Ice Co. 279 Ky. 793, 132 S. W. 2d 347 (1939); Santee v. Ungerleider Motor Co. 48 Pa. D. & C. 179 (1943). See, also, cases collected in Annotations, 16 A. L. R. 1113; 35 A. L. R. 65; 54 A. L. R. 377; 61 A. L. R. 1191; 78 A. L. R. 1029; 87 A. L. R. 1471; 111 A. L. R. 1263.

[16] See, e. g., Brown v. Shyne, *supra*; Hardy v. Dahl, 210 N. C. 530, 187 S. E. 788 (1936). But see, Whipple v. Grandchamp, *supra*; Harris v. Graham, *supra*.

suming that plaintiffs could establish all of the facts they have alleged, the bank's violation of the statute could not constitute the proximate cause of Raymond Kronzer's loss of his expectancy. Thus, the trial court properly granted summary judgment for defendants on the claim based on negligence per se.

We now turn to plaintiffs' claim based on actual negligence, which the trial court found to be barred by collateral estoppel. We agree that it is highly doubtful that the negligence claim survived the stipulation of settlement and the order of distribution based thereon. It is true that the stipulation of settlement preserved plaintiffs' right to proceed with this action.[17] On the other hand, the stipulation contained language by which plaintiffs expressly abandoned all claims against the trust and the amendments thereto.[18] Moreover, the order of distribution, from which no appeal was taken, declared the 1970 amendment to be the governing trust instrument.

Plaintiffs' actual negligence claim depends upon proof that Raymond Dart was incompetent and under undue influence when the 1970 amendment was made. If he was, then the 1970 amendment could not be valid. The validity of that amendment has already been established by the stipulation of settlement and order

---

[17] The relevant section of the stipulation provides: "It is specifically understood and agreed by all the parties that Hennepin County District Court Case No. 680046, which case has the same plaintiffs as the present case, is not in any manner deemed to be settled or compromised or dismissed, released or waived, by the entering into of this Settlement Agreement in the above captioned matter."

[18] The relevant section of the stipulation provides: "That the claims and allegations of the plaintiffs in the above captioned action, in respect to the subject trusts, and all the amendments therein, are hereby withdrawn and abandoned by plaintiffs, with prejudice, in respect to the above noted parties defendant. And plaintiffs by this agreement when executed by all parties and approved by the Court, do hereby release defendants from all claims, causes of action and demands of every kind and nature, whether at this time known or not, whether such claim or claims have enured to said plaintiffs prior to the death of Raymond H. Dart or subsequent thereto."

of distribution. Plaintiffs are collaterally estopped from raising that issue.[19]

The trial court found plaintiffs' actual negligence claim barred on another ground. If the bank were held liable on an actual negligence theory, it would have an indemnity claim against Ivan Dart.[20] Dart, however, by reason of the hold-harmless agreement would have a claim for indemnity against the plaintiffs. Thus, even if plaintiffs established a right to recover from the bank, they would in any event ultimately bear the loss. The litigation would be fruitless.

Plaintiffs attempt to avoid this problem by arguing that the bank is precluded from recovering indemnity from Ivan Dart. They argue that violation of Minn. St. 481.02 gives rise to absolute liability and that indemnity against such liability would be contrary to public policy. See, Zerby v. Warren, 297 Minn. 134, 210 N. W. 2d 58 (1973).

Plaintiffs' contention is without merit for two reasons: First, the Zerby rationale is applicable only if plaintiffs are basing their case upon the bank's violation of the statute rather than the bank's actual negligence. Because we are here concerned with whether the plaintiffs should be entitled to maintain their case on the actual negligence theory, the effect of a violation of Minn.

---

[19] Both the stipulation, as approved by the district court, and the order of distribution should be treated as having a collateral estoppel effect equivalent to that of a consent judgment and precluding litigation of all issues which could have been litigated at that time. See, In re Estate of Bush, 302 Minn. 188, 224 N. W. 2d 489 (1974); In re Application of Schaefer to Register Title, 287 Minn. 490, 178 N. W. 2d 907 (1970); Pangalos v. Halpern, 247 Minn. 80, 76 N. W. 2d 702 (1956).

[20] If there were undue influence on the part of the Darts, their fault would be active, while the fault of the bank in failing to discover the undue influence would merely be passive, thus giving rise to an indemnity claim. See, e. g., Sorenson v. Safety Flate, Inc. 298 Minn. 353, 216 N. W. 2d 859 (1974); Hillman v. Ellingson, 298 Minn. 346, 215 N. W. 2d 810 (1974); Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960).

St. 481.02 on indemnity claims is wholly irrelevant. Second, in Zerby we emphasized the rule that violation of a statute usually gives rise only to negligence per se. As examples of statutes which are exceptions to this general rule and which create an absolute duty, the court listed child labor statutes, statutes for the protection of intoxicated persons, and statutes prohibiting the sale of dangerous articles to minors. It is clear that Minn. St. 481.02 does not fall within this limited class of exceptional statutes. See, also, Trail v. Christian, 298 Minn. 101, 213 N. W. 2d 618 (1973); Dart v. Pure Oil Co. 223 Minn. 526, 27 N. W. 2d 555 (1947).

Under the circumstances of this case, the trial court properly granted summary judgment in favor of defendant on the actual negligence claim.

We need spend little time on plaintiffs' contention that they were entitled to recover from the bank attorneys fees they incurred in settling the declaratory judgment action. Plaintiffs' theory is that such fees constitute exemplary damages. For several reasons, we find this argument without merit. First, the stipulation of settlement in the declaratory judgment action expressly provides that plaintiffs are to pay the fees incurred by them in securing the settlement. Second, the hold-harmless agreement between plaintiffs and the Darts would bar any recovery. Finally, there is nothing in the documents accompanying the moving papers of the parties to suggest that the bank was guilty of any actual malice.

Finally, we reach the question of whether the bank was entitled to recover its attorneys fees in this action either from the trust or from the third-party defendant. The bank argues that it is entitled to recover its fees from the trust because those fees were incurred in defending the trust. We find no abuse of discretion in the trial court's rejection of this claim. It is clear that a trustee may recover attorneys fees only where those fees are incurred in rendering a benefit to the trust estate. See, e. g., In re Trust Created Under Will of Freeman, 247 Minn. 50, 75 N. W.

2d 906 (1956); In re Trust Under Will of Comstock, 219 Minn. 325, 17 N. W. 2d 656 (1945); In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. 2d 736 (1949). It is apparent that the bank's defense of this action could in no way benefit the trust. The validity of the trust instruments was not at issue and for the reasons discussed above could not have become an issue.

The bank's claim that it is entitled to recover attorneys fees from the third-party defendant is resolved by our holding that the trial court properly granted summary judgment for defendant on the actual negligence claim. Any right of the bank to recover attorneys fees from the third-party defendant is wholly derivative of the bank's indemnity claim. In other words, the bank would be entitled to recover its attorneys fees only if plaintiffs prevailed upon their claim of actual negligence, giving rise to the bank's right to seek indemnity from the Darts. Thus, the bank's claim was premature and it is not entitled to recover fees from Ivan Dart because the negligence action will not be tried.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.